## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

XTO ENERGY, INC.,

       Plaintiff,

vs.                                                                                    No. CIV 14-1021 JB/SCY

ATD, LLC, AIR TECH DRILLING, INC. and
ZURICH AMERICAN INSURANCE COMPANY,

       Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiffs-in-Intervention's First Amended Motion to Intervene and Memorandum in Support, filed December 20, 2015 (Doc. 42)("Motion").  The Court held a hearing on March 1, 2016.  The primary issues are: (i) whether the Plaintiffs-in-Intervention -- Scott Manley, Shanna Manley, Jose Betancur, and Virginia Betancur -- have a sufficient interest in the litigation to intervene as of right under rule 24(a) of the Federal Rules of Civil Procedure when their interests are contingent upon obtaining a judgment against Plaintiff XTO Energy, Inc. in state court and they have not shown that XTO Energy will be unable to satisfy a judgment against it; (ii) whether XTO Energy will adequately represent the Plaintiffs-in-Intervention in the current case; and (iii) whether the Court should allow the Plaintiffs-in-Intervention to intervene under rule 24(b), which allows for permissive intervention, even if they cannot intervene as of right.  The Plaintiffs-in-Intervention's Motion is timely, but they have not shown that their interest will be impaired or that XTO Energy will not adequately represent their interest.  The Court therefore denies the Motion to intervene under rule 24(a).  Second, although the Plaintiffs-in-Intervention's claims and the main action have a

question of law or fact in common, intervention will unduly delay and prejudice the adjudication

of the original parties' rights.  The Court therefore denies intervention under rule 24(b).

## **FACTUAL BACKGROUND**

This case involves numerous parties who contracted with each other to provide services

and insurance.  Below, the Court describes the parties involved, their contracts, and the disputes

that surround those contracts.  The Court takes its facts from Defendant Zurich American

Insurance Company's Motion for Summary Judgment, filed November 13, 2015 (Doc.

32)("MSJ"), Plaintiff XTO Energy Inc.'s Memorandum in Support of Response to Defendant

Zurich American Insurance Company's Motion for Summary Judgment, filed December 21,

2015 (Doc. 44)("MSJ Response"), and the Defendant Zurich American Insurance Company's

Reply in Support of Motion for Summary Judgment, filed February 1, 2016 (Doc. 59)("MSJ

Reply").

1.      **The Parties.**

XTO Energy is an oil-and-gas well operator that contracts with various contractors to

perform well operations.  See MSJ at 1; MSJ Response ¶ A, at 2.[1]  Defendant Air Tech Drilling,

Inc., a contractor, is a New Mexico corporation based in Bloomfield, New Mexico and formed

on June 9, 2006.  See MSJ ¶¶ 7, 10, at 4; MSJ Response ¶ A, at 2.[2]  Air Tech's corporate status

---

[1]XTO Energy does not dispute any of Defendant Zurich American Insurance Company's factual assertions.  It states in its MSJ Response that "there is no genuine issue of material fact." MSJ Response at 6.

[2]Throughout its MSJ Response, XTO Energy does not distinguish between Air Tech and ATD, LLC, using the phrase "Air Tech/ATD" to refer to both entities.  E.g., MSJ Response ¶ J, at 4.  Zurich Insurance disputes all of XTO Energy's factual assertions that suggest that Air Tech and ATD, LLC are the same entity.  See MSJ Reply ¶ B, at 3.  Zurich American Insurance Co. contends that Air Tech and ATD, LLC are not the same entity, and provides documents to support its objection. See Reply ¶ B, at 3; New Mexico Secretary of State Office, Information on Air Tech Drilling, Inc., filed November 13, 2015 (Doc. 33-1)(demonstrating that: (i) Air Tech's corporate status was revoked on June 28, 2010; (ii) Air Tech was a New Mexico corporation

was revoked on June 28, 2010.  See MSJ ¶ 7, at 4.  Defendant ATD, LLC is a New Mexico limited liability company based in Hobbs, New Mexico, originally formed as a New Mexico corporation on September 22, 2006, and converted into a limited liability company on August 27, 2009.  See MSJ ¶ 8, at 4.  Zurich American Insurance Co. is an insurance company that provides insurance for Air Tech.  See MSJ ¶ 19, at 6.  ATD, LLC employed Scott Manley and Jose Betancur, who were working at the XTO Energy Well site on November 8, 2012.  See MSJ ¶ 9, at 4.  Scott Manley and Shanna Manley ("the Manleys"), as well as Jose and Virginia Betancur ("the Betancurs"), individually and as Next Friend of Vanessa B. Betancur, Valerie Betancur, and Jose Betancur, minors, filed litigation in state court against XTO Energy, Weatherford Artificial Lift Systems, Inc., Weatherford International, Inc., Weatherford U.S., L.P., Basic Energy Services, Inc., BOS Roustabout Service, LLC, Gabriel Valdez, and Randy Green.  See MSJ ¶¶ 1-2, at 2; Response ¶¶ M-N, at 4.

## 2.  **The Master Service Contract.**



On November 8, 2006, XTO Energy entered into a Master Service Contract ("Master Contract" or "MSC") with Air Tech.  MSJ ¶¶ 7, 10, at 4; MSJ Response ¶ A, at 2.  The Master

---

based in Bloomfield, New Mexico, formed on June 9, 2006; and (iii) ATD, LLC was formed as a corporation on September 22, 2006, based in Hobbs, New Mexico and converted to a limited liability company on August 27, 2009).  Because Zurich Insurance presents credible evidence that Air Tech and ATD, LLC are not the same entity, the Court deems it disputed whether they are the same entity.  While the issue is disputed, it is not material to the current dispute.  The Court will therefore refer to and treat Air Tech and ATD, LLC as distinct entities.  See D.N.M.LR-Civ. 56(b).  Additionally, the Court will refer only to Air Tech when describing the Contractor's obligations in the Master Contract.  This adoption of terminology does not determine that Air Tech and ATD, LLC are separate entities, as that determination is not relevant here.

Contract provides that Air Tech, "as 'Contractor,' would provide certain well-related services to XTO." MSJ ¶ 10, at 4; MSJ Response ¶ A, at 2. "The MSC defines 'XTO Group' as 'XTO, its Affiliates, co-owners . . . at the Site, joint venturers, partners, contractors and subcontractors other than Contractor or its Subcontractors and all of their respective directors, officers, employees, representatives, agents, licensees and invitees.'" MSJ ¶ 11, at 4. The Master Contract defines "Contractor Group" as "Contractor, its Affiliates, any Subcontractor of Contractor, and their respective directors, officers, employees, representatives, agents, licensees and invitees." MSJ ¶ 13, at 4-5. XTO Energy's Complaint for Breach of Contract, Unfair Practices and Declaratory Relief, filed November 10, 2014 (Doc. 1)("XTO Complaint"), does not allege that "XTO or any defendants named in the Manley Complaint or the Betancur Complaint is a member of the 'Contractor Group.'" MSJ ¶ 14, at 5.

Master Contract § 10, entitled "RELEASE, DEFENSE, INDEMNITY, AND HOLD HARMLESS," states:

> 10.1.1  Contractor hereby agrees to release, defend, indemnify and hold the XTO Group harmless from and against any and all claims, demands, and causes of action of every kind and character (including without limitation, fines, penalties, remedial obligations, court costs and reasonable attorney's fees, including attorney's fees incurred in the enforcement of this indemnity)(hereinafter collectively referred to as the 'Indemnifiable Claims') arising out of, without limitation bodily injury and/or death of any one or more members of the Contractor Group in any manner incident to, connected with or arising out of the performance of the Work. *This obligation is without regard to the cause or causes of such bodily injury, death, loss of or damage to property and includes, but is not limited to, Indemnifiable Claims resulting from any sole, joint or concurrent negligence, strict liability, or other act and/or omission of any one or more members of the XTO Group.*
>
> 10.1.2  To the extent not covered in Section 10.3, Contractor hereby further agrees to release, defend, indemnify and hold the XTO Group harmless from and against any and all Indemnifiable Claims *arising out of the emission, discharge or negligence, strict liability, or other act and/or omission of any one or more members of the Contractor Group, which is in any manner incident to, connected with or arises out of the performance of the Work.*

> 10.1.3  *Contractor agrees that its indemnity obligations herein will be supported by insurance* with at least the minimum amounts provided in Article XI, which insurance will be primary to any other insurance provided by or available to any one or more members of the XTO Group *and shall provide waivers of subrogation against all members of the XTO Group*.  To the extent that applicable law prohibits the monetary limits of insurance required or the indemnities voluntarily assumed hereunder, the requirements will automatically be revised to conform, to the maximum extent permitted, with applicable law.

MSJ ¶ 15, at 5 (quoting Master Contract §10.1 (emphases in MSJ)).

Master Contract § 11.4 provides that all Contractor's liability insurance policies must name "XTO Group" as an additional insured and must "contain a waiver on the part of the insurer, by subrogation or otherwise, of all rights against the XTO Group."  MSJ ¶ 16, at 5-6.

Master Contract § 10.4 also contains a savings clause, which states:

> SPECIAL PROVISION FOR NEW MEXICO.  THE FOLLOWING PROVISION APPLIES WHERE WORK IS TO BE PERFORMED IN NEW MEXICO, NOTWITHSTANDING ANY PROVISIONS IN THE CONTRACT TO THE CONTRARY.  *To the extent this Article X is governed by New Mexico law, then the provisions therein shall be read not to include indemnification for one's own negligence.*

MSJ ¶ 17, at 6 (quoting MSC §10.4 (emphasis in MSJ)).  MSC § 14.8 provides that Texas law -- "excluding the Texas rules on conflict of law" -- governs the Master Contract.  MSJ ¶ 18, at 6.

3.  **The Zurich Policy.**



Zurich Insurance issued "a commercial general liability policy ('Policy') to Mesa Well Servicing, LP, policy number GLO 4391238-03, effective July 1, 2012 through July 1, 2013." MSJ ¶ 19, at 6.  "The Policy's Commercial General Liability Coverage Part Declarations page identifies Mesa Well Servicing, LP as the Named Insured."  MSJ ¶ 19, at 6.  The Policy's Commercial General Liability Coverage Form states that "[t]hroughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations and any other person or organization qualifying as a Named Insured under this policy."  MSJ ¶ 20, at 6.  The Policy's Schedule of Named Insureds includes Air Tech.  See MSJ ¶ 21, at 6.

In describing the coverage, the Policy states in the section entitled "Coverage A Bodily Injury and Property Damage Liability ('Coverage A')":

> We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' *to which this insurance applies*.  We will have the right and duty to defend the insured against any 'suit' seeking those damages.  However, *we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply*.  We may, at our discretion, investigate any 'occurrence' and settle any claim or 'suit' that may result. . . .  But: . . . No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments -- Coverages A and B.

MSJ ¶ 22, at 6-7 (emphasis in MSJ).

Coverage A excludes coverage for "'Bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement," except for liability for damages: "(1) That the insured would have in the absence of the contract or agreement; or (2) Assumed in a contract or agreement that is an 'insured contract', provided the 'bodily injury' or 'property damage' occurs subsequent to the execution

of the contract or agreement."[3]  MSJ ¶ 23, at 7.  The Policy defines "Insured contract" as: "That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization."  MSJ ¶ 24, at 7.  The Policy defines "tort liability" as "a liability that would be imposed by law in the absence of any contract or agreement."  MSJ ¶ 24, at 7.

In the Commercial General Liability Coverage Part, the Policy defines "insured" as "any person or organization qualifying as such under Section II -- Who is an insured."  MSJ ¶ 25, at 7.  The Policy contains an Additional Insured Endorsement, which modifies the insurance provided under the Commercial General Liability Coverage Part as follows:

A.   Section II -- Who Is An Insured is amended to include as an insured any person or organization who you are required to add as an additional insured on this policy under a written contract or written agreement.

B.   The insurance provided to the additional insured person or organization applies only to 'bodily injury', 'property damage' . . . covered under Section I -- Coverage A -- Bodily Injury and Property Damage Liability . . . *but only with respect to liability for 'bodily injury'*, 'property damage' . . . *caused, in whole or in part, by:*

1.   *Your acts or omissions;*

2.   *The acts or omissions of those acting on your behalf, and resulting directly from your ongoing operations of 'your work' as included in the 'products-completed operations hazard'*, which is the subject of the written contract or written agreement. . . .

D.   The insurance provided to the additional insured person or organization does not apply to: 'Bodily injury', 'property damage' . . . arising out of the rendering or failure to render any professional architectural, engineering or surveying services including:

1.   The preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

_____

[3]XTO Energy does not address this factual assertion, so the Court deems it undisputed. See D.N.M.LR-Civ. 56(b).

2.  Supervisory, inspection, architectural or engineering activities."

MSJ ¶ 26, at 8 (emphasis in MSJ).

The Zurich Policy further provides that, when the insured -- Air Tech -- has assumed liability for reasonable attorney's fees and expenses under an "insured contract," the insurer will reimburse those fees and expenses as damages.  Response ¶ I, at 3-4.  All of the claims asserted in the XTO Complaint are based entirely on obligations that Air Tech, ATD, LLC and Zurich Insurance allegedly owe under the Master Contract and the Zurich Policy "for the claims asserted against XTO Group members in the Manley and Betancur Complaints."  MSJ ¶ 27, at 8.

4.      **The State Litigation.**

On November 8, 2012, an accident occurred at a well in Eddy County, New Mexico, resulting in a fire.  See MSJ ¶ 1, at 2; Response ¶ J, at 4.  On November 8, 2012, ATD, LLC and Air Tech provided services on the well.  See Response ¶ K, at 4.  ATD, LLC employed Scott Manley and Jose Betancur, who were working at the XTO Well site on November 8, 2012.  See MSJ ¶ 9, at 4.  The parties dispute whether XTO Energy directed or supervised Air Tech.  See XTO Complaint ¶ 15, at 3 ("The MSC further provides that Air Tech/ATD would be, at all material times, an independent contractor and would have complete and sole control over their employees, the details of the work performed and the methods by which the work was accomplished."); Transcript of Hearing at 35:13-16 (taken March 1, 2016)("Tr.")[4]("There is a question about whether XTO supervised and directed the work at the well site.  And that is an issue that's hotly contested by XTO in the underlying case.").  On March 13, 2013, as a result of the November 8, 2012 accident, Scott Manley and Shanna Manley filed the Plaintiffs' Complaint to Recover Damages for Personal Injury in the Fifth Judicial District Court, Eddy County, State

_____

[4]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

of New Mexico, D-503-CV-2013-00241, against XTO Energy and other defendants.  MSJ ¶ 1, at 2; Response ¶ M, at 4.  On May 22, 2014, Jose and Virginia Betancur, individually and as Next Friend of Vanessa B. Betancur, Valerie Betancur, and Jose Betancur, minors, filed their Complaint in Intervention to Recover Damages for Personal Injury ("Betancur Complaint") in the same state case in connection with the same November 8, 2012 incident.  MSJ ¶ 2, at 2; Response ¶ N, at 4.

The defendants in both state complaints consist of XTO Energy, Weatherford Artificial Lift Systems, Inc., Weatherford International, Inc., Weatherford U.S., L.P., Basic Energy Services, Inc., BOS Roustabout Service, LLC, Gabriel Valdez, and Randy Green.  See Manley Complaint at 1; Betancur Complaint at 1.  "Most or all of the other defendants in the Manley suit are members of the XTO Group."  MSJ ¶ 12, at 4.  The Betancur Complaint asserts against XTO Energy's and the other defendants' claims of "negligence; respondeat superior; negligent selection, retention, and supervision of contractors/subcontractors; liability for nondelegable duty/joint and several liability; and violation of statute/negligence as a matter of law."  MSJ ¶ 2, at 2.  It requests damages for J. Betancur's bodily injuries, punitive damages, and damages for loss of consortium.  See MSJ ¶ 2, at 2.  On June 2, 2014, the Manleys amended their Complaint to assert "the same claims against the same defendants as the Betancur Complaint."  MSJ ¶ 3, at 2.

The Manley Complaint and Betancur Complaint allege that, "at the time of the incident, XTO owned and operated the well ('XTO Well') and that Randy Green was XTO's 'Company Man' at the well site, with overall authority and control over the site."  MSJ ¶ 4, at 3.  Both Complaints assert claims against XTO Energy, Green, and certain contractors that provided well-related services to XTO Energy at the XTO Well: Weatherford Artificial, Weatherford

International, Weatherford U.S., Basic Energy, BOS Roustabout, and Valdez, a Weatherford-entity employee.  See MSJ ¶ 5, at 3.  "Neither the Manley Complaint nor the Betancur Complaint alleges any wrongdoing or asserts any claims against Air Tech, ATD, LLC, Mesa Well Servicing, LP, or their employees."  MSJ ¶ 5, at 3.

On February 28, 2013, XTO Energy tendered its defense to Air Tech and ATD, LLC "pursuant to the indemnity provision and the additional insured requirement" in the Master Contract that it signed.  Response ¶ O, at 4.  Zurich Insurance acknowledged XTO Energy's tender of defense and indemnity to Air Tech Drilling in its April 3, 2013 letter to XTO Energy.  See Response ¶ P, at 4.[5]  In response to Zurich Insurance's inquiries, XTO Energy informed Zurich Insurance that Air Tech or ATD, LLC "must provide indemnity and a defense pursuant to the MSC."  Response ¶ Q, at 4.

In an email dated November 10, 2013, Zurich Insurance responded to XTO Energy, denying any obligation to indemnify XTO Energy, but agreeing to defend XTO Energy as an additional insured under a reservation of rights.  See Response ¶ R, at 5; Reply ¶ F, at 3.  XTO Energy accepted Zurich Insurance's defense tender, and Zurich Insurance stated that the law firm that XTO Energy retained as counsel, Holland & Hart LLP, was on its approved counsel list.  See Response ¶ S, at 5.  Zurich Insurance attempted to reach an agreement with Holland & Hart over the firm's hourly rates for attorney's fees, but did not reimburse XTO Energy for any fees or expenses, notwithstanding that it asked to be billed directly for fees incurred after it accepted the defense tender.  See Response ¶ T, at 5.  Zurich Insurance stated that it would defend XTO Energy only if it could arrive at an agreement over hourly rates for attorney's fees.  See

_____

[5]Zurich Insurance does not dispute this fact, so the Court deems it undisputed.  See D.N.M.LR-Civ. 56(b).

Response ¶ U, at 5.  Zurich Insurance could not reach an agreement on the law firm's hourly rates.  <u>See</u> Response ¶ V, at 5.

**PROCEDURAL BACKGROUND**

XTO Energy's Complaint for Breach of Contract, Unfair Practices and Declaratory Relief, filed November 10, 2014 (Doc. 1)("XTO Complaint"), alleges that "Air Tech and ATD, LLC breached contractual duties under a Master Service Contract to defend XTO against the claims asserted in the Manley and Betancur Complaints."  MSJ ¶ 6, at 3.  It further asserts that Zurich Insurance breached its defense and reimbursement obligations to XTO Energy under the commercial general liability policy that Zurich Insurance issued to Mesa Well Servicing.  <u>See</u> MSJ ¶ 6, at 3-4.

XTO Energy alleges four claims.  It first alleges breach of contract against Air Tech and ATD, LLC.  <u>See</u> XTO Complaint ¶¶ 42-47, at 6-7.  It contends that "XTO and Air Tech entered into a binding written master service contract," which "is binding upon Air Tech and ATD."  XTO Complaint ¶ 43, at 6.  It states that Air Tech and ATD, LLC "have materially breached the MSC by refusing to defend XTO," and that XTO Energy is "entitled to recover damages."  XTO Complaint ¶¶ 45-47, at 6-7.  Second, XTO Energy asserts a breach-of-contract claim against Zurich Insurance.  <u>See</u> Complaint ¶¶ 48-54, at 7.  It alleges that Zurich Insurance breached the Policy by: (i) refusing to defend XTO Energy; (ii) refusing to reimburse XTO Energy for fees and expenses incurred; and (iii) refusing to pay XTO Energy's counsel.  <u>See</u> XTO Complaint ¶ 51, at 7.  Third, XTO Energy contends that "Zurich's actions and inactions, as alleged [in the XTO Complaint], constitute violations of New Mexico's unfair claims practices statutes, § 59A-16-1 <i>et seq.</i>"  XTO Complaint ¶ 56, at 7.  Finally, XTO Energy asks the Court to "declare the duties and obligations of Zurich under the Policy."  XTO Complaint ¶ 60, at 8.

1.      **The Motion to Intervene**.

On December 20, 2015, the Plaintiffs-in-Intervention filed their Motion requesting to intervene in the federal litigation and to file their Complaint-in-Intervention, filed December 20, 2015 (Doc. 42-2)("Complaint-in-Intervention").  Motion at 1.  They assert that they comply with all of rule 24's requirements for intervening as a matter of right.  First, they argue that their Motion is timely, because they filed it before the Court's deadline for joining parties passed: December 20, 2015.  See Motion at 9.  They contend that they did not strategically wait to intervene until late in the case and do not seek to disrupt the case's progression.  See Motion at 9.

Second, they allege that they have an interest in the property and transaction at issue.  See Motion at 10.  They describe the claims they assert against XTO Energy in the Manley and Betancur litigation, and contend that the Master Contract requires Air Tech to indemnify and defend XTO Energy and other contractors in the XTO Group.  See Motion at 11.  They explain how XTO Energy sought to discount the Plaintiffs-in-Intervention's damages against XTO Energy for Air Tech's percentage of comparative fault.  See Motion at 12.  They argue that this discount "is inappropriate where XTO is entitled to indemnification by Air Tech/ATD."  Motion at 12.  Accordingly, they assert that they have a similar interest in determining whether New Mexico's Oilfield Anti-Indemnity Statute, N.M. Stat. Ann. § 56-7-2, voids the indemnity agreement.  See Motion at 12.  Moreover, they contend that they have an additional interest in determining whether the Master Contract requires Zurich Insurance to waive subrogation for worker's compensation benefits it paid to the Manleys and Betancurs.  See Motion at 12.

Third, the Plaintiffs-in-Intervention allege that the litigation may impair or impede their legal interests relating to the transaction and property at issue.  See Motion at 12-13.  They state that their interests are "contingent upon the outcome of the litigation," because the Court's resolution of the legal questions may foreclose their rights in later proceedings, "whether through

res judicata, collateral estoppel, or stare decisis." Motion at 13. They argue: "Zurich's refusal to provide indemnity to XTO, combined with XTO's position on a discount for Air Tech/ATD's conduct impairs Plaintiffs-In-Intervention's rights." Motion at 13.

Fourth, the Plaintiffs-in-Intervention assert that the current parties cannot adequately protect their interests. See Motion at 13. They explain that, because they are currently "litigating against XTO Group members in the Manley-Betancur Litigation, including XTO Energy, . . . [t]hese parties are not in a position to advocate for Plaintiffs-in-Intervention's interests." Motion at 13. As evidence, they state that XTO Energy "actively hid the existence of the federal litigation from Plaintiffs-In-Intervention." Motion at 13. They concede that they "share an interest in having the MSC indemnification clauses declared valid," but argue that "XTO has shown its divergent interests from Plaintiffs-In-Intervention by attempting to argue that Plaintiffs-In-Intervention should discount their claims to account for any comparative fault percentage on the part of Air Tech/ATD." Motion at 13.

Additionally, the Plaintiffs-in-Intervention contend that the Court should permit them to intervene under rule 24(b). See Motion at 15. They assert that their claims and the claims currently involved "have questions of law and fact in common, because they all arise out of the MSC and the explosion which occurred on November 8, 2012." Motion at 15. They further allege that the intervention will not unduly delay or prejudice the adjudication, because XTO Energy "should have anticipated intervention, given the underlying lawsuit," and because "this litigation is still in its nascency." Motion at 15. Finally, they "request that the scope of their intervention participation in this litigation be broad." Motion at 17.

### 2.    The Complaint-in-Intervention.

The Complaint-in-Intervention alleges three claims. First, it asks the Court to declare that: (i) the Master Contract between XTO Energy and Air Tech contains valid indemnification

clauses; (ii) Zurich Insurance must indemnify XTO Energy for an adverse judgment or settlement in the Manley and Betancur litigation; and (iii) Zurich Insurance agreed to waive subrogation and reimbursement for workers' compensation benefits that Zurich Insurance paid. See Complaint-in-Intervention ¶ 55, at 9-10.  Second, Count Two alleges a breach-of-contract claim against all of the Defendants.  See Complaint-in-Intervention ¶¶ 57-72, at 10-12.  The Plaintiffs-in-Intervention contend that, as persons exposed to the work that the Master Contract covered, they are intended third-party beneficiaries of the Master Contract.  See Complaint-in-Intervention ¶ 64, at 11.  They argue that the Defendants materially breached the Master Contract "by not providing Zurich coverages to XTO and Plaintiffs-in-Intervention at the Settlement Conference . . . for any purported comparative negligence on the part of Air Tech/ATD and because Zurich has also breached its duty to act in good faith and deal fairly with XTO." Complaint-in-Intervention ¶ 65, at 11.

Count Three asserts that Zurich Insurance "engaged in prohibited and illegal unfair claims practices" under New Mexico's Unfair Claims Practices Act, N.M. Stat. Ann. § 59A-16-20 by: (i) failing to adopt reasonable standards to investigate and process insureds' claims; (ii) not attempting in good faith to effectuate prompt and fair settlements of insureds' claims; (iii) failing to settle an insureds' claims promptly where liability has become apparent; and (iv) failing to promptly provide an insured a reasonable explanation of the basis relied upon in denying a claim.  Complaint-in-Intervention ¶ 75, at 12.  The Plaintiffs-in-Intervention further allege that Zurich Insurance engaged in prohibited unfair claims practices under N.M. Stat. Ann. § 59A-16-24 by "charging ATD/Air Tech an extra premium . . . in exchange for Zurich's waiver of workers compensation subrogation/reimbursement provision in the MSC, which constituted illegal conduct."   Complaint-in-Intervention ¶ 76, at 12-13.  Accordingly, the Plaintiffs-in-

Intervention request actual damages, compensatory damages, consequential damages, statutory damages, punitive damages, pre-judgment and post-judgment interest, and attorney's fees and costs.  See Complaint-in-Intervention ¶ 80, at 13-14.

### 3. Zurich Insurance's Response.

Zurich Insurance responded on January 15, 2016 (Doc. 52)("Zurich Response").  It asks the Court to deny the Plaintiffs-in-Intervention's Motion, because it does not meet rule 24's requirements.  See Zurich Response at 1.  Zurich Insurance first contends that all of the claims in the litigation "are based entirely on obligations allegedly owed by defendants Air Tech, ATD, LLC, and Zurich under the MSC" and the Zurich Policy, yet the Plaintiffs-in-Intervention are not parties to Master Contract or insureds under the Zurich Policy at issue.  Zurich Response at 9-10. Accordingly, Zurich Insurance argues, the Plaintiffs-in-Intervention "have no contractual rights to assert nor 'value' to offer with respect to the claims asserted by the existing parties, including the declaratory relief."  Zurich Response at 10.  Zurich Insurance asserts that the Plaintiffs-in-Intervention "have no present interests that could possibly be impaired by reason of their absence from this case as parties."  Zurich Response at 10.

Zurich Insurance further contends that the Plaintiffs-in-Intervention "cannot show that they face *any* risk that they will be unable to recover from XTO in the absence of the CGL[6] insurance coverage XTO seeks."  Zurich Response at 12.  It explains that XTO Energy "is wholly owned by Exxon, a multi-billion dollar corporation" with the ability to pay a judgment in this case.  Zurich Response at 12.  Zurich Insurance also asserts that the Plaintiffs-in-Intervention cannot "show that XTO cannot adequately represent their claimed interests in this case."  Zurich Response at 12.  It contends that the Plaintiffs-in-Intervention "have the same objective as XTO - - a determination whether the Zurich CGL Policy provides coverage for any judgment against

_____

[6]"CGL" refers to a commercial general liability insurance policy.  Zurich Response at 6.

XTO in the underlying Manley and Betancur lawsuits." Zurich Response at 12. Zurich Insurance concludes that the movants "cannot meet the requirements of either Rule 24(a)(2) or Rule 24(b)." Zurich Response at 13. Finally, Zurich Insurance argues that the Plaintiffs-in-Intervention's Complaint-in-Intervention adds new issues that would unduly delay the proceedings and not resolve the existing issues. See Zurich Response at 14.

### 4.    XTO Energy's Response.

XTO Energy objected to the intervention on January 15, 2016. See Plaintiff XTO Energy, Inc.'s Opposition to Plaintiffs-in-Intervention's First Amended Motion to Intervene, filed January 15, 2016 (Doc. 53)("XTO Response"). First, XTO Energy contends that the Plaintiffs-in-Intervention have no interest in this case, because they have not won a judgment in the state litigation. See XTO Response at 2-3. It argues that the Plaintiffs-in-Intervention's interest is therefore "a purely economic, contingent interest," which "is not a sufficient protectable interest under Rule 24." XTO Response at 3. XTO Energy asserts that "[t]his forecloses any possibility for intervention as of right." XTO Response at 2.

XTO Energy further asserts that, even if Plaintiffs-in-Intervention have a sufficient interest, their "interests are aligned with XTO's interests, and XTO will adequately represent their interests in advocating for coverage and defense of the claims asserted in the State Case." XTO Response at 2. It contends that its "objectives *in this litigation* are identical" to the Plaintiffs-in-Intervention's objectives, even if they have different motivations in state court. XTO Response at 5 (emphasis in original). It argues that the Court should therefore "deny Plaintiffs-In-Intervention's request to intervene in this case because Plaintiffs-In-Intervention do not qualify for intervention under Rule 24." XTO Response at 2. Finally, XTO Energy argues that the Court should not allow permissive intervention, because the Complaint-in-Intervention raises issues that will unduly delay the case. See XTO Response at 7-8.

- 16 -

5.      **The Plaintiffs-in-Intervention's Reply.**

The Plaintiffs-in-Intervention replied on January 27, 2016.   See Plaintiffs-in-Intervention's Reply in Support of Motion to Intervene and Memorandum in Support, filed January 27, 2016 (Doc. 57)("Reply").   The Plaintiffs-in-Intervention first assert that neither XTO Energy nor Zurich Insurance dispute that the Motion is timely.   See Reply at 2 n.1.   They then argue that they have a sufficient interest in the property as "intended third party beneficiaries to the MSC or to the implied contract."   Reply at 3.   They state that, under New Mexico law, "intended beneficiaries can seek enforcement of a contract."   Reply at 4.

The Plaintiffs-in-Intervention primarily reiterate the arguments they raised in their Motion.   See Reply at 5-8.   They state that their interests diverge from XTO Energy's interests, because XTO Energy has asked them to "discount their claims against XTO for Air Tech/ATD's comparative fault percentages."   Reply at 5.   The argue that this "discount is inappropriate where XTO is entitled to indemnification by Air Tech/ATD."   Reply at 5.   They emphasize that the burden of showing inadequate representation is "**minimal**."   Reply at 7 (emphasis in Reply). Further, the Plaintiffs-in-Intervention contend that, because intervention may be based on a contingent interest, the litigation may impede their legal interests.   See Reply at 6.   They primarily underscore that the "**threshold for finding the requisite legal protectable interest is not high**."   Reply at 6 (emphasis in Reply).

Regarding permissive intervention under rule 24(b), the Plaintiffs-in-Intervention argue that their claims will not unduly delay the proceedings, because they are "related to interpretation of the MSC."   Reply at 10-11.   Again, they remind the Court that it has broad discretion to grant permissive intervention.   See Reply at 11.   They conclude by arguing that the Court should not limit their participation in the suit.   See Reply at 11-12.

6.      __The Hearing__.

The Court held a hearing on March 1, 2016.  <u>See</u> Transcript of Hearing (taken March 1, 2016)("Tr.").[7]  The Plaintiffs-in-Intervention first explained why they sought to intervene.  <u>See</u> Tr. at 48:2-13 (Sanders).  They stated that they did not want the Court to void the indemnity agreements without having an opportunity to make arguments, and then to have Zurich Insurance or XTO Energy raise the Court's orders against them in the state litigation.  <u>See</u> Tr. at 48:2-13 (Sanders).  They further explained that their Complaint-in-Intervention raises additional issues. <u>See</u> Tr. at 54:19-20 (Sanders).

To begin, the Plaintiffs-in-Intervention stated, their Complaint-in-Intervention makes a bad-faith claim against Zurich Insurance, alleging that they are third-party beneficiaries of the Master Contract.  <u>See</u> Tr. at 54:23-25 (Sanders).  Second, they described how their Complaint-in-Intervention raises a workmen's compensation offset issue "that has not been raised by XTO in response to the briefing in this litigation."  Tr. at 54:19-23 (Sanders).  The Plaintiffs-in-Intervention clarified that the workmen's compensation issue is not an additional claim, but an additional issue that the Court should consider in deciding how to interpret the Master Contract. <u>See</u> Tr. at 55:2-12 (Court, Sanders).

The Plaintiffs-in-Intervention then argued that they met all of rule 24(a)'s requirements. They stated that, as third-party beneficiaries of the Master Contract, they have an interest in the case's subject matter.  <u>See</u> Tr. at 68:20-25 (Sanders).  They contended that XTO Energy would not adequately represent their interests, because XTO Energy and the Plaintiffs-in-Intervention are adverse parties in the state litigation.  <u>See</u> Tr. at 70:4-9 (Sanders).  With respect to permissive intervention, the Plaintiffs-in-Intervention emphasized that the Court has discretion to allow

---

[7]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

intervention.  See Tr. at 69:2-8 (Sanders).  They explained that the legal and factual questions are common, and that their intervention would not unduly delay or prejudice the current parties.  See Tr. at 69:8-13 (Sanders).  They stressed that "the threat of economic injury is enough under the Tenth Circuit intervention rules" to allow their intervention.  Tr. at 69:19-22 (Sanders).

In response, XTO Energy disputed whether the Plaintiffs-in-Intervention had a sufficient interest to allow intervention.  See Tr. at 70:16-21 (Ramirez).  It explained that the Plaintiffs-in-Intervention had not obtained either a judgment or a settlement in the underlying case, and "so at this point they haven't established that they have any rights to anything under the Zurich Policy."  Tr. at 71:4-8 (Ramirez).  Further, it explained, the current litigation does not involve XTO Energy's insurance program; it involves ATD, LLC's insurance program.  See Tr. at 71:9-14 (Ramirez).  XTO Energy argued that, even if ATD, LLC does not indemnify XTO Energy under the Master Contract, XTO Energy maintains its own insurance coverage, so it would be able to pay a judgment in the state litigation.  See Tr. at 71:15-19 (Ramirez).  Next, XTO Energy argued that the Plaintiffs-in-Intervention could not demonstrate that XTO Energy would not adequately represent their interests in obtaining coverage.  See Tr. at 73:2-6 (Ramirez).

XTO Energy added that one of the biggest practical problems with allowing the Plaintiffs-in-Intervention to enter the case would be making "them privy to the discovery that is going to take place."  Tr. at 71:20-25 (Ramirez).  XTO Energy asserted that the discovery involves protected, sensitive information that the Plaintiffs-in-Intervention should not obtain, especially considering that they are adverse parties in the underlying litigation.[8]  See Tr. at 72:1-

---

[8]At the hearing, the Court stated that confidentiality issues are not a reason to deny intervention, because the Court could issue a confidentiality order.  See Tr. at 72:19-20 (Court).  XTO Energy acknowledged that it had discussed the possibility of asking for a modified protective order that would allow it to "exchange freely with Zurich and not allow anybody else."  Tr. at 72:21-25 (Ramirez).

11 (Ramirez).  XTO Energy then described another practical problem with intervention that the Court should consider under rule 24(b): the Plaintiffs-in-Intervention's proposed claims "have nothing to do with the policies that are at issue in this case" -- commercial general liability policies.  Tr. at 73:10-15 (Ramirez).  It argued that the Plaintiffs-in-Intervention's proposed claims "interject Zurich American's completely different underwritten workers' compensation policy," which "adds time and expense to the pending litigation."  Tr. at 73:11-20 (Ramirez).  XTO Energy argued that, accordingly, "the issues in the present action don't represent a common question of law or fact of the plaintiffs in the underlying case."  Tr. at 73:21-25 (Ramirez).

In arguing against intervention, Zurich Insurance reiterated many of the points that XTO Energy raised.  See Tr. at 74:15-78:15 (Johansen).  Specifically, Zurich Insurance emphasized that XTO Energy had its own insurance program that was fully capable of meeting any judgment that the Plaintiffs-in-Intervention obtain in state court.  See Tr. at 75:4-14 (Johansen).  It also echoed XTO Energy's concern about protecting discovery.  See Tr. at 80:3-11 (Johansen)(explaining that the discovery requests involve attorney's fees, which "can give the plaintiffs a road map to what the defense is doing in the underlying case").

Zurich Insurance then explained that the Plaintiffs-in-Intervention could not pursue their claims, which served as another reason to deny intervention.  See Tr. at 76:1-6.  It stated that "New Mexico law for years has said there is no third-party cause of action against an insurance company" based on New Mexico's Unfair Claims Practices Act unless a court has entered judgment in the underlying lawsuit.  Tr. at 76:3-16 (Johansen).  Zurich Insurance explained that, with no judgment so far, the Plaintiffs-in-Intervention cannot intervene.  See Tr. at 76:3-25 (Johansen).  Regarding the Plaintiffs-in-Intervention's breach-of-contract claim, Zurich Insurance argued that "there is no breach of contract where they are not parties to the case."  Tr.

at 78:1-3 (Johansen).  Moreover, Zurich Insurance contended that, "Count 1 is basically identical to what XTO is arguing," so XTO Energy can adequately represent the Plaintiffs-in-Intervention's interests.  Tr. at 78:4-7 (Johansen).  Regarding the workers' compensation claim, Zurich Insurance contended that the claim "is based on a totally separate Zurich policy, has never been raised by Zurich or XTO in this case, [and] is not part of" Defendant Zurich American Insurance Company's Motion for Summary Judgment, filed November 13, 2015 (Doc. 32)("Motion for Summary Judgment").  Tr. at 78:16-24 (Johansen).  Zurich Insurance concluded that "[t]here is no real good reason for them to intervene, because it doesn't matter whether XTO prevails against Zurich or Zurich prevails in this matter, XTO is going to have plenty of money to satisfy any judgment."  Tr. at 80:12-20 (Johansen).

In reply, the Plaintiffs-in-Intervention clarified that their insurance code count alleges that Zurich Insurance is acting in direct contravention of its obligations under the Zurich Policy.  See Tr. at 81:22-82:3 (Sanders).  They did not argue further in support of the Motion.  Although the Court had not allowed the Plaintiffs-in-Intervention to intervene, the Court allowed them to argue against Zurich Insurance's Motion for Summary Judgment, to the extent they thought XTO Energy did not fully represent their interests.  See Tr. at 39:14-15 (Court)(offering the Manleys and the Betancurs the opportunity to argue against summary judgment).  The Court further directed them to file a brief stating their position and allowed Zurich Insurance to respond to the brief.  See Tr. at 83:2-25 (Court, Johansen, Sanders).

## LAW REGARDING INTERVENTION AS OF RIGHT

Rule 24(a) provides for intervention of right:

(a)     **Intervention of Right.**  On timely motion, the court must permit anyone
        to intervene who:

- 21 -

> (1)   is given an unconditional right to intervene by a federal statute; or
>
> (2)   claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a).  The movant bears the burden of establishing its right to intervene.  <u>See United States v. Tex. E. Transmission Corp.</u>, 923 F.2d 410, 414 (5th Cir. 1991).  A court generally may not consider concerns of judicial economy and efficiency when ruling on a request to intervene as of right.  <u>See United States v. Union Elec. Co.</u>, 64 F.3d 1152, 1158 & n.1 (8th Cir. 1995)("We find that supplanting the standards applicable to intervention as of right under Rule 24(a) with policy considerations led to the erroneous denial of intervention in this case."); <u>In re Sierra Club</u>, 945 F.2d 776, 779 (4th Cir. 1991)("The district court, however, incorrectly bolstered its denial of intervention of right by referring to concerns of judicial economy and need for guidance.  Although those issues have a place in motions for permissive intervention, Rule 24(a) affords them no weight.").

To intervene as a matter of right under rule 24(a)(2), the movant must show that: (i) the motion is timely; (ii) the movant claims an interest relating to the property or transaction which is the subject of the action; (iii) the movant's interest relating to the property may be impaired or impeded; and (iv) the movant's interest is not adequately represented by existing parties.  <u>See Elliot Indus. Ltd P'ship v. Am. Prod. Co.</u>, 407 F.3d 1091, 1103 (10th Cir. 2005).

## 1.   <u>Timeliness</u>.

"The timeliness of a motion to intervene is assessed in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances."

Am. Assoc. of People with Disabilities v. Herrera, 257 F.R.D. 236, 245 (D.N.M. 2008)(Browning, J.)(quoting Utah Ass'n of Ctys. v. Clinton, 255 F.3d 1246, 1250 (10th Cir. 2001)).  "Unusual circumstances" refers to those circumstances that would excuse the untimely filing of a motion to intervene.  In re SEC, 296 F. App'x 637, 640 (10th Cir. 2008)(unpublished). In measuring timeliness by the length of time that the applicant knew of its interest, the Tenth Circuit looks to the point in time "when the movant was on notice that its interests may not be protected by a party already in the case."  Okla. ex rel. Edmondson v. Tyson Foods, Inc., 619 F.3d 1223, 1232 (10th Cir. 2010).

### 2. **Sufficient Interest**.

"Under rule 24(a)(2), the applicants must claim . . . an interest relating to the property or transaction which is the subject of the action."  Utah Assoc. of Ctys. v. Clinton, 255 F.3d at 1250 (internal quotation marks omitted).  "The Tenth Circuit requires that the interest be 'direct, substantial, and legally protectable.'"  Forest Guardians v.  U.S. Dep't of Interior, No. CIV-02-1003, 2004 WL 3426413, at *5 (D.N.M. Jan. 12, 2004)(Browning, J.)(quoting Utah Assoc. of Ctys. v. Clinton, 255 F. 3d at 1250).  The Tenth Circuit has also noted that the inquiry is "highly fact-specific," and that "the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process."  Utah Assoc. of Ctys. v. Clinton, 255 F.3d at 1251-52.  "The threshold for finding the requisite legal protectable interest is not high."  Forest Guardians v.  U.S. Dep't of Interior, 2004 WL 3426413, at *5 (citing Utahns for Better Transp. v. U.S. Dep't of Transp., 295 F.3d 1111, 1115 (10th Cir. 2002))("Furthermore, the Tenth Circuit has deemed the mere threat of economic injury to be sufficient for granting intervention.").

"[T]he federal judiciary has experienced considerable difficulty in defining the interest necessary to satisfy Rule 24(a)(2) since the time of its 1966 amendment." Carl Tobias, Standing to Intervene, 1991 Wis. L. Rev. 415, 432 (1991).  See Panola Land Buying Ass'n v. Clark, 844 F.2d 1506, 1523 (11th Cir.1988)(Clark, J., dissenting)("[N]o authoritative definition of this term has emerged."); Nuesse v. Camp, 385 F.2d 694, 700 (D.C. Cir. 1967)("We know of no concise yet comprehensive definition of what constitutes a litigable 'interest' for the purposes of standing and intervention under Rule 24(a)."), cited with approval in Jansen v. City of Cincinnati, 904 F.2d 335, 341 (6th Cir. 1990).  The Supreme Court of the United States has said that the interest must be "significantly protectable."  Donaldson v. United States, 400 U.S. 517, 528 (1971). Charles Wright, however, observes that "'significantly protectable interest' has not been a term of art in the law and there is sufficient room for disagreement about what it means . . . ." 7C C. Wright et al., Federal Practice and Procedure § 1908 (3d ed. 2015).

While some courts define "interest" narrowly, see Liberty Mut. Ins. Co. v. Treesdale, Inc., 419 F.3d 216, 220 (3d Cir. 2005)(McKee, J.), the Tenth Circuit has interpreted rule 24(a) more broadly, see Utahns for Better Transp. v. U.S. Dep't of Transp., 295 F.3d at 1115 ("[O]ur court has tended to follow a somewhat liberal line in allowing intervention.").   In contrast with the Third Circuit, see Liberty Mut. Ins. Co. v. Treesdale, Inc., 419 F.3d at 220 ("In general, a mere economic interest in the outcome of litigation is insufficient to support a motion to intervene."), "the Tenth Circuit has deemed the mere threat of economic injury to be sufficient for granting intervention," Utahns for Better Transp. v. U.S. Dep't of Transp., 295 F.3d at 1115.

The Tenth Circuit has described the interest test as "a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process."  San Juan Cty., Utah v. United States, 503 F.3d at 1195 (quoting Coalition of

Ariz./N.M. Counties for Stable Economic Growth v. Dep't of Interior, 100 F.3d 837, 841 (10th Cir. 1996))(internal quotation marks omitted).  The Tenth Circuit has stated that this more lenient view "best reflects the purpose of Rule 24(a)(2)."  San Juan Cty., Utah v. United States, 503 F.3d at 1195.

> As the Advisory Committee Notes to the 1966 Amendment state, "If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene . . . ."  Fed. R. Civ. P. 24, advisory committee notes (1966 Amendment); *see* Comm. on Rules of Practice and Procedure, Report, Ex. B, *supra* ("The effect of the amendment [to Rule 24] is to provide that if a person who would be affected *in a practical sense* by the disposition of an action is not joined as a party, he has a right to intervene unless he is adequately represented by an existing party.") . . . .
>
> As we understand Rule 24(a)(2), the factors mentioned in the Rule are intended to capture the circumstances in which the practical effect on the prospective intervenor justifies its participation in the litigation. Those factors are not rigid, technical requirements.

San Juan Cty., Utah v. United States, 503 F.3d at 1195.  As a consequence, the Tenth Circuit directs courts to "focus on the language and purpose of the Rule."  San Juan Cty., Utah v. United States, 503 F.3d at 1195.  Other Courts of Appeal have correspondingly interpreted rule 24 broadly.  For example, the Sixth Circuit has stated that "interest" for the purposes of rule 24(a) "is to be construed liberally."  Bradley v. Milliken, 828 F.2d 1186, 1192 (6th Cir. 1987)(citing Hatton v. Cty. Bd. of Educ. Of Maury Cty., Tenn., 422 F.2d 457, 461 (6th Cir. 1970)).

A source of particular disagreement has been "[w]hether an interest contingent upon the outcome of other pending litigation constitutes a 'significantly protectable interest[.]'"  Teague v. Bakker, 931 F.2d 259, 261 (4th Cir. 1991)(Chapman, J.).  Some courts have denied intervention when an intervenor's interest is contingent upon future events, like winning a separate lawsuit.  See Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co., 105 F.R.D. 106, 110 (D.D.C. 1985)(Flannery, J.).  They contend that, without "a present, non-contingent interest" in the case in which the intervenor seeks to intervene, the intervenor lacks the "'significantly protectable

interest' required for intervention as of right."  Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co., 105 F.R.D. at 110.

As a rejoinder to this reasoning, other courts, including the Tenth Circuit, have concluded that "the contingent nature of the movant's interest is certainly an important factor which should influence the court in its determination as to the appropriateness of intervention, [but] this one factor alone should not be determinative."  New Hampshire Ins. Co. v. Greaves, 110 F.R.D. 549, 552 (D.R.I. 1986)(Pettine, J.).  See San Juan Cty., Utah v. United States, 503 F.3d at 1203 ("Although the intervenor cannot rely on an interest that is wholly remote and speculative, the intervention may be based on an interest that is contingent upon the outcome of the litigation.")(quoting United States v. Union Elec. Co., 64 F.3d 1152 1162 (8th Cir. 1995)); St. Paul Fire & Marine Ins. Co. v. Summit-Warren Indus. Co., 143 F.R.D. 129, 134 (N.D. Ohio 1992)(Bell, J.).  "There is nothing in the wording or history of Rule 24 which indicates intent to exclude would be intervenors whose interest in the pending litigation is not yet vested.  In many instances, such exclusion would seem highly inappropriate and unjust."  New Hampshire Ins. Co. v. Greaves, 110 F.R.D at 552.  Moreover, allowing an intervenor with a contingent interest to intervene will usually only strengthen the litigation, making the parties' presentation of the issues more sharply focused:

> Surely it runs counter to our notions of fairness and justice to find that the company would be harmed by being forced to face a stronger, more vigorous opposition.  The role of this court and the judicial process is to reach a just and equitable resolution based on the facts, a task which can only be aided and served by the assistance of the strongest possible arguments by counsel.

New Hampshire Ins. Co. v. Greaves, 110 F.R.D at 552.  See also Teague v. Bakker, 931 F.2d 259, 261 (4th Cir. 1991)(expressly adopting this reasoning).

In line with this reasoning, the Tenth Circuit and numerous other Courts of Appeal have permitted intervenors with a contingent interest to intervene.  For instance, in Security Insurance Co. of Hartford v. Schipporeit, Inc., 69 F.3d 1377 (7th Cir. 1995), the Seventh Circuit permitted a church suing an architect to intervene in a suit by the architect's insurer for a declaratory judgment that it had no obligation to defend or indemnify the architect, whose only significant asset was the insurance policy.  See 69 F.3d at 1380-81.  The church's economic interest was contingent upon its ability to win its lawsuit against the architect.  See 69 F.3d at 1380-81. Despite the church's contingent interest, the Seventh Circuit affirmed the district court order permitting intervention.  See 69 F.3d at 1380-81.

Similarly, the Eighth Circuit has also interpreted rule 24 to allow intervention when the intervenor's interest is not directly at issue.  See Planned Parenthood of Minnesota, Inc. v. Citizens for Community Action, 558 F.2d 861 (8th Cir.1977)(Gibson, J.).

> In Planned Parenthood of Minnesota, Inc. v. Citizens for Community Action, 558 F.2d 861 (8th Cir. 1977), for example, a group of homeowners was allowed to intervene in an action involving the constitutionality of a municipal ordinance which placed a temporary moratorium on the operation of abortion clinics.  The potential loss in the market value of the intervenors' homes constituted a sufficient "interest" under Rule 24(a)(2) even though three events would have had to take place before the homeowners experienced any actual loss: (1) the city had to lose the court fight on the constitutionality of the ordinance, (2) the abortion clinic had to open, and (3) the clinic's operation had to lead to a reduction in the homeowners' property values.

San Juan Cty., Utah v. United States, 503 F.3d at 1197-98 (quoting SEC v. Flight Transp. Corp., 699 F.2d 943, 948 (8th Cir. 1983)).

Furthermore, the Fifth Circuit affirmed a judgment permitting an insurer to intervene to appeal a judgment against its insured.  See Ross v. Marshall, 426 F.3d 745, 757 (5th Cir. 2005)(describing the interest test as a "practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process").  The

Fifth Circuit observed that "an insurer has a financial stake in securing a favorable outcome for its insured in a lawsuit alleging potentially covered claims," even though "some contingency remains in that [the insurer] may still avoid liability if it prevails in its coverage action."  426 F.3d at 757-59.  The Fifth Circuit found "this contingency insufficient to preclude intervention." 426 F.3d at 759.  "The court appeared more interested in practical matters . . . ."  San Juan Cty., Utah v. United States, 503 F.3d at 1198.

　　　Like these other Courts of Appeal, the Tenth Circuit has determined that an economic interest, which may be contingent upon future events, can constitute a sufficient interest to allow intervention.  See National Farm Lines v. Interstate Commerce Commission, 546 F.2d 381, 384 (10th Cir. 1977)(permitting intervention when a lawsuit would subject the intervenors to "unregulated competition"); Utahns for Better Transp. v. U.S. Dep't of Transp., 295 F.3d at 1115-16 (concluding that a trade association had a sufficient interest when a lawsuit's resolution could result in the potential loss of government contracts).  In allowing intervention in San Juan County, Utah v. United States, the Tenth Circuit expressly stated that "intervention may be based on an interest that is contingent upon the outcome of the litigation."  San Juan Cty., Utah v. United States, 503 F.3d at 1203.  The Tenth Circuit limited its opinion in City of Stilwell, Oklahoma v. Ozarks Rural Electric Co-op. Corp., 79 F.3d 1039, 1042 (10th Cir. 1996), which suggested that some contingent interests were not sufficient to permit intervention.  See San Juan Cty., Utah v. United States, 503 F.3d at 1202-03.  Instead, the Tenth Circuit stated that it "do[es] not read [City of Stilwell, Oklahoma v. Ozarks Rural Electric Co-op. Corp.] to say that every contingent interest fails to satisfy Rule 24(a)(2). . . .  KAMO's problem was that its interest was *too* contingent, *too* indirect, and hardly substantial . . . ."  San Juan Cty., Utah v. United States, 503 F.3d at 1203.  See Design Basics, LLC v. Estate of Aus, 2014 WL 65754, at *3 (D. Kan.

- 28 -

2014)(O'Hara) (stating that the Tenth Circuit has affirmed "that not *every* contingent interest fails to satisfy Rule 24(a)(2)")(emphasis in original)(citing San Juan Cty., Utah v. United States, 503 F.3d at 1202.  The Tenth Circuit concluded: "Although the intervenor cannot rely on an interest that is wholly remote and speculative, the intervention may be based on an interest that is contingent upon the outcome of the litigation."  San Juan Cty., Utah v. United States, 503 F.3d at 1203.

### 3.   **Impairment of Interest.**

 "To satisfy [the impairment] element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied. This burden is minimal."  WildEarth Guardians v. U.S. Forest Serv., 573, F.3d 992, 995 (10th Cir. 2009)("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene."). "Although the intervenor cannot rely on an interest that is wholly remote and speculative, the intervention may be based on an interest that is contingent upon the outcome of the litigation." San Juan Cty., Utah v. United States, 503 F.3d 1163, 1203 (10th Cir. 2007)(en banc).  A third-party's interest may be impaired "when the resolution of the legal questions in the case effectively foreclose [sic] the rights of the intervenor in later proceedings, whether through res judicata, collateral estoppel, or stare decisis."  Ute Distrib. Corp. v. Norton, 43 F. App'x 272, 279 (10th Cir. 2002)(unpublished).

### 4.   **Inadequate Representation.**

"Although an applicant for intervention as of right bears the burden of showing inadequate representation, that burden is the 'minimal' one of showing that representation 'may' be inadequate."  Forest Guardians v.  U.S. Dep't of Interior, 2004 WL 3426413, at *6.  "The

most common situation in which courts find representation adequate arise when the objective of the [movant] is identical to that of one of the parties." Bottoms v. Dresser Indus., Inc., 797 F.2d 869, 872-73 (10th Cir. 1986). The Tenth Circuit has found, however, that the "possibility of divergence of interest need not be great in order to satisfy the burden of the applicants." Coal. of Ariz./N.M. Ctys. for Stable Econ. Growth v. Dep't of Interior, 100 F.3d 837, 845 (10th Cir. 1996). This minimal burden is further reduced when it is the government that is supposed to adequately represent the potential intervenor's interest. See Utah Assoc. of Ctys. v. Clinton, 255 F.3d at 1254-1255. "[A] presumption of adequate representation arises when an applicant for intervention and an existing party have the same ultimate objective in the litigation," but the Tenth Circuit has "held this presumption rebutted by the fact that the public interest the government is obligated to represent may differ from the would-be-intervenor's particular interest." Utah Assoc. of Ctys. v. Clinton, 255 F.3d at 1255. The Tenth Circuit stated:

> [T]he government's representation of the public interest generally cannot be assumed to be identical to the individual parochial interest of a particular member of the public merely because both entities occupy the same posture in the litigation. In litigating on behalf of the general public, the government is obligated to consider a broad spectrum of views, many of which may conflict with the particular interest of the would-be intervenor.

Utah Assoc. of Ctys. v. Clinton, 255 F.3d at 1255-56. Thus, when a prospective intervenor shows that the "public interest the government is obligated to represent may differ from the would-be intervenor's particular interest," the burden of demonstrating inadequate representation is met. Utah Assoc. of Ctys. v. Clinton, 255 F.3d at 1255.[9]

---

[9]The Court previously denied intervention, based on the adequacy-of-representation prong, in a case in which the State of New Mexico represented potential intervenors' private interests. See Am. Ass'n of People with Disabilities v. Herrera, 257 F.R.D. at 260. While the Court continues to believe that its reasoning concerning the state's ability to adequately represent some of the potential intervenors' private interests is correct, its conclusion may be contrary to Tenth Circuit law, as the Court has construed it in this opinion. In that case, several public

- 30 -

interests groups sued the New Mexico Secretary of State, seeking a declaration that amendments to the New Mexico electoral statute, N.M. Stat. Ann. § 1-4-49, were unconstitutional. See Am. Ass'n of People with Disabilities v. Herrera, 257 F.R.D. at 240-41. The amendments required third-party voter registration agents to register with the state; the amendments also provided "various procedures and penalties regarding the activities of third-party registration agents." Am. Ass'n of People with Disabilities v. Herrera, 257 F.R.D. at 241 (citing N.M. Stat. Ann. § 1-4-49). A number of potential intervenors sought to intervene in the case. See 257 F.R.D. at 241. They included a New Mexico State Senator; the Republican Party of New Mexico and its secretary; a New Mexico State Representative; and a county clerk. See 257 F.R.D. at 241. The Court denied intervention and found that the State of New Mexico adequately represented each of the potential intervenors' interests. See 257 F.R.D. at 252-58.

For the New Mexico State Senator and the Republican Party's secretary, the Court concluded that their interests were public interests in "fair elections free of fraud" rather than private interests. 257 F.R.D. at 253-54. The Court reasoned that the Tenth Circuit's skepticism towards a government entity's representation of private interests did not apply because the senator and secretary did not have private interests in the case; they had public interests. See 257 F.R.D. at 253-54. Thus, the Court reasoned that these potential intervenors had the same interests as the State of New Mexico and that the State adequately protected their interests. See 257 F.R.D. at 253-54. This reasoning is not contrary to Tenth Circuit law, because the Tenth Circuit has not yet addressed whether a government entity adequately represents an intervenor who asserts a public interest. The Court's conclusion that the State adequately represented the private interests of the remaining potential intervenors, however, may be contrary to Tenth Circuit law, as the Court has construed it in this opinion.

The Court relied on three grounds to conclude that the State of New Mexico adequately represented the remaining potential intervenors' private interests. First, the Court concluded that, at the time it was considering the motion to intervene, the State was vigorously defending the statute and there was no indication that it would cease its vigorous defense. See 257 F.R.D. at 255, 257, 258. Second, the Court noted that the potential intervenors and the State had taken the same legal position: to defend the statute. See 257 F.R.D. at 255, 257, 258. Third, the Court concluded that the potential intervenors had failed to show that the State would not adequately represent their interests. See 257 F.R.D. at 255, 257, 258. The Tenth Circuit has addressed each of these arguments and has concluded that they are insufficient to find adequate representation when a potential intervenor must rely on a government entity to protect its private interests.

First, the Court found that the State of New Mexico was vigorously defending the statute and that there was no indication that it would cease its defense of the statute. See Am. Ass'n of People with Disabilities v. Herrera, 257 F.R.D. at 255, 257, 258. The Court noted that it was "certainly possible that in the future the Defendant will quit representing [the potential intervenors'] interests adequately." 257 F.R.D. at 257. The Court did not use this possibility of future inadequate representation to permit intervention, but instead noted that the potential intervenors could renew their motion at a later date, if the State stopped vigorously defending the statute and their interests. See 257 F.R.D. at 257-58. The Tenth Circuit has held that the possibility of inadequate representation is sufficient for intervention. See WildEarth Guardians v. U.S. Forest Serv., 573 F.3d at 996 ("'An intervenor need only show the possibility of inadequate representation.'" (quoting Utah Ass'n of Ctys. v. Clinton, 255 F.3d at 1254)(alterations omitted)(emphasis in WildEarth Guardians but not in Utah Association of

Counties)).  The Tenth Circuit also held that the "possibility that the interests of the applicant and the parties may diverge need not be great."  Utah Ass'n of Ctys. v. Clinton, 255 F.3d at 1254 (internal quotation marks omitted).  Finally, the Tenth Circuit has held that, when a government entity is a party in a case, its past conduct in vigorously supporting a potential intervenor's interests is insufficient to find adequate representation.  See Utah Ass'n of Ctys. v. Clinton, 255 F.3d at 1256 (holding that the United States did not adequately represent intervenors' private interests despite the United States vigorously supporting the intervenors interests up until that point by noting that "'it is not realistic to assume that the agency's programs will remain static or unaffected by unanticipated policy shifts'" (quoting Kleissler v. U.S. Forest Serv., 157 F.3d at 974)).  Accordingly, even though there was no indication in American Association of People with Disabilities v. Herrera that the State of New Mexico would stop representing the potential intervenors' interests, according to the Tenth Circuit, the mere possibility that the State could change its position should have been sufficient to warrant intervention.  See Utah Ass'n of Ctys. v. Clinton, 255 F.3d at 1256.

Second, the Court noted that the potential intervenors and the State had taken the same legal position: defend the statute.  See Am. Ass'n of People with Disabilities v. Herrera, 257 F.R.D. at 255, 257, 258.  This reasoning is similar to the Tenth Circuit's presumption that representation is adequate when an existing party and a potential intervenor share the same objectives in the case.  See Coal. of Ariz./N.M. Ctys. for Stable Econ. Growth v. Dep't of Interior, 100 F.3d at 845.  The Tenth Circuit has held that this presumption is rebutted when the existing party represents multiple interests, such as a government entity representing the public's interests.  See Utah Ass'n of Ctys. v. Clinton, 255 F.3d at 1255-56; WildEarth Guardians v. U.S. Forest Serv., 573 F.3d at 996.  Thus, even though the State and the potential intervenors shared the same objective in the case -- defending the statute -- the Tenth Circuit's assumption that the State must represent multiple interests -- the public's interests -- rebuts the presumption that the State adequately represented the potential intervenor's private interests.

Third, the Court concluded that the potential intervenors failed to show that the State would not adequately represent their interests.  See Am. Ass'n of People with Disabilities v. Herrera, 257 F.R.D. at 255, 257, 258.  The Court stated: "While the Tenth Circuit has cautioned that district courts must be skeptical that the government can adequately represent private interests, it has not eliminated that requirement [that the potential intervenor must prove inadequate representation] in cases against the government.  The potential intervenor still must make the minimal showing."  Am. Ass'n of People with Disabilities v. Herrera, 257 F.R.D. at 255.  The Tenth Circuit, however, has held that a potential intervenor has to show only that its interests may diverge from the existing parties' interests to satisfy its burden of showing inadequate representation.  See Utah Ass'n of Ctys. v. Clinton, 255 F.3d at 1254.  Because, under Tenth Circuit law, a government entity is assumed to represent the public's interests, which will by necessity diverge from a potential intervenor's private interests, a potential intervenor has to show only that it is relying on the government to protect its interests to prove inadequate representation.  See WildEarth Guardians v. U.S. Forest Serv., 573 F.3d at 996.  The Tenth Circuit has noted:

We have held, however, that the intervenor's 'showing is easily made when the party upon which the intervenor must rely is the government, whose obligation is to represent not only the interest of the intervenor but the public interest generally,

## LAW REGARDING PERMISSIVE INTERVENTION

Rule 24(b) provides for permissive intervention:

(1)    **In General.**  On timely motion, the court may permit anyone to intervene who:

      (A)    is given a conditional right to intervene by a federal statute; or

      (B)    has a claim or defense that shares with the main action a common question of law or fact.

(2)    **By a Government Officer or Agency.**  On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on:

      (A)    a statute or executive order administered by the officer or agency; or

      (B)    any regulation, order, requirement, or agreement issued or made under the statute or executive order.

(3)    **Delay or Prejudice.**  In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. 24(b).  The movant bears the burden of establishing its right to intervene.  See

United States v. Tex. E. Transmission Corp., 923 F.2d at 414.  "Unlike Rule 24(a), which

---

and who may not view that interest as coextensive with the intervenor's particular interest.

WildEarth Guardians v. U.S. Forest Serv., 573 F.3d at 996 (quoting Utah Ass'n of Ctys. v. Clinton, 255 F.3d at 1254).  According to Tenth Circuit law, once the potential intervenors, in American Association of People With Disabilities v. Herrera, showed that they must rely on the State of New Mexico to protect their private interests, they met their burden of showing inadequate representation, because the State's interests differed from the potential intervenors' private interests.  See WildEarth Guardians v. U.S. Forest Serv., 573 F.3d at 996.

While the Court continues to agree with its result in American Association of People with Disabilities v. Herrera, because the Court believes that the State of New Mexico is in the best possible position to defend its own laws, even laws that protect others' private interests, its rationale is contrary to the Tenth Circuit's law as the Court has strictly construed the law in this opinion.

governs mandatory intervention, Rule 24(b) specifically vests discretion in district courts to consider whether intervention will unduly delay or prejudice the adjudication of the rights of the original parties."   6 James W. Moore, <u>Moore's Federal Practice</u> § 24.10[1], at 24-63 (3d ed. 2012)(citation omitted).  <u>Accord</u> <u>In re Sierra Club</u>, 945 F.2d at 779 ("The district court, however, incorrectly bolstered its denial of intervention of right by referring to concerns of judicial economy and need for guidance.  Although those issues have a place in motions for permissive intervention, Rule 24(a) affords them no weight.").   "The district court possesses broad discretion in determining whether to grant permissive intervention and will rarely be reversed on appeal."  6 Moore, <u>supra</u>, § 24.10[1], at 24-63.  "[C]onsiderations of trial convenience dominate the question of whether to allow permissive intervention."  6 Moore, <u>supra</u>, § 24.10[1], at 24-63. <u>Accord</u> <u>Garza v. Cty. of L.A.</u>, 918 F.2d 763, 777 (9th Cir. 1990)("The decision to grant or deny [permissive] intervention is discretionary, subject to considerations of equity and judicial economy.").

 "To permissively intervene, a party need not have a direct personal or pecuniary interest in the subject of the litigation."   <u>San Juan Cty., Utah v. United States</u>, 503 F.3d at 1207. Permissive intervention lies in the court's sound discretion, and the appellate court will not disturb the district court's exercise of that discretion absent clear abuse.  <u>See</u> <u>United Nuclear Corp. v. Cranford Ins. Co.</u>, 905 F. 2d 1424, 1427 (10th Cir. 1990).  As the Court has previously stated:

> Rule 24(b) allows permissive intervention under the following conditions: (i) the application to intervene is timely; (ii) the applicant's claim or defense and the main action have a question of law or fact in common; and (iii) intervention will not unduly delay or prejudice the adjudication of the original parties' rights.

<u>Forest Guardians v.  U.S. Dep't of Interior</u>, 2004 WL 3426413, at *10-11.  Rule 24(b)(3) requires the court to consider whether intervention will cause undue delay or prejudice when

considering whether to grant permissive intervention.  See Fed. R. Civ. P. 24(b)(3); DeJulius v. New Eng. Health Care Emps. Pension Fund, 429 F.3d 935, 943 (10th Cir. 2005)(noting that district courts are required to consider undue prejudice or delay in deciding whether to grant permissive intervention); Am. Ass'n of People with Disabilities v. Herrera, 257 F.R.D. at 259. While not a required part of the test for permissive intervention, a court's finding that existing parties adequately protect prospective intervenors' interests will support a denial of permissive intervention.  See City of Stilwell v. Ozarks Rural Elec. Coop. Corp., 79 F.3d 1038, 1043 (10th Cir. 1996).

## ANALYSIS

To intervene, the Plaintiffs-in-Intervention must show that: (i) their Motion is timely; (ii) they claim an interest relating to the property or transaction which is the subject of the action; (iii) the Court's disposition of the action may impair or impede their interest; and (iv) the existing parties do not adequately represent their interest.  See Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co., 407 F.3d 1091, 1103 (10th Cir. 2005).  The Plaintiffs-in-Intervention's Motion is timely, but at this time, they have not shown that their interest will be impaired or that XTO Energy will not adequately represent their interest.  The Court therefore denies the Motion to intervene under rule 24(a).  Second, although the Plaintiffs-in-Intervention's claims and the main action have a question of law or fact in common, intervention will unduly delay and prejudice the adjudication of the original parties' rights.  The Court therefore denies intervention under rule 24(b).

## I.      THE COURT WILL DENY THE MOTION PURSUANT TO RULE 24(a).

The Plaintiffs-in-Intervention do not meet all of rule 24(a)'s requirements to intervene as a matter of right.  See Fed. R. Civ. P. 24(a).  As an initial matter, their Motion to Intervene is timely.  They filed their Motion before the Court's deadline to join parties.  See S2 Automation

LLC v. Micron Tech., Inc., No. CIV 11-0884 JB/WDS, 2012 WL 3656462, at *13 (D.N.M. Aug. 14, 2012)(Browning, J.)(stating that a party's motion to intervene was timely when the movant filed it before the Court's deadline for amendments and joinder).   Neither XTO Energy nor Zurich Insurance argues that the Plaintiffs-in-Intervention's Motion is untimely.   See XTO Response at 3; Zurich Response at 9.

Although the Motion is timely, the Plaintiffs-in-Intervention do not show that the Court's disposition of the action may impair or impede their substantial legal interests, as rule 24(a) requires.   See Fed. R. Civ. P. 24(a).   They assert an interest in: (i) the insurance proceeds that Zurich Insurance would pay to XTO Energy if XTO Energy is held liable to the Plaintiffs-in-Intervention in the state litigation, see Motion at 12 (explaining that the Plaintiffs-in-Intervention have an interest in determining whether Zurich Insurance will indemnify XTO Energy if XTO Energy is held liable in the state litigation); Reply at 6-7 (arguing that the Plaintiffs-in-Intervention's interest is "in the Zurich coverages provided pursuant to the MSC"), and (ii) retaining those insurance proceeds by denying Zurich Insurance any rights to subrogation or reimbursement, see Motion at 12 (explaining their interest in retaining the insurance proceeds and declaring that the Master Contract requires Zurich Insurance to waive subrogation and reimbursement for workers compensation benefits it paid to the Plaintiffs-in-Intervention). These interests are not necessarily distinct.[10]   See Tri-State Generation & Transmission Ass'n, Inc. v. New Mexico Pub. Regulation Comm'n, 787 F.3d at 1072 (noting that all of the proposed intervenor's interests "ineluctably flow from its objective of preserving the NMPRC's jurisdiction over Tri-State's wholesale electricity rates" and that "[e]ach of KCEC's claimed

---

[10]Notably, the subrogation provision's validity raises a separate issue that neither Zurich Insurance nor XTO Energy has raised in this case.   See Tr. at 78:20-25 (Johansen)(arguing that the subrogation provisions involve "a totally separate Zurich policy, has never been raised by Zurich or XTO in this case, [and] is not part of the motion for summary judgment").

interests are part and parcel of its broader interest in maintaining the NMPRC's jurisdiction over these rates"). All of the Plaintiffs-in-Intervention's claims relate to their interest in obtaining and retaining the insurance proceeds that Zurich Insurance must pay to XTO Energy if the Plaintiffs-in-Intervention prevail in the state litigation. The insurance proceeds, however, constitute only one pool of money available to satisfy a judgment against XTO Energy in the state litigation. See Tr. at 71:11-12 (Ramirez)("XTO does have its own insurance program."). XTO Energy has an insurance program in addition to the Master Contract's insurance provisions.[11]   See Tr. at 75:4-8 (Johansen)(recognizing that XTO Energy has an insurance program in place and stating that "there is plenty of money to meet any judgment that the plaintiffs could get in the case"). Consequently, the Plaintiffs-in-Intervention's interests are not only contingent upon obtaining a judgment against XTO Energy in the state litigation, but they are also contingent upon XTO

---

[11]XTO Energy repeatedly emphasized that it had its own insurance program in addition to the Master Contract. See Tr. at 71:11-12 (Ramirez). It assured the Court that it had sufficient assets to satisfy any judgment against it in the state litigation. XTO Energy did not explain, however, the details of this insurance program or the extent of coverage. Without further information, the Court conjectures that XTO Energy's insurance program might consist of self-insurance up to a certain amount, with an excess policy beyond that amount. Regardless of the program's details, however, XTO Energy and its owner indicate that it has sufficient assets to cover a state court judgment. XTO Energy is wholly owned by Exxon Mobil Corp., a multi-billion dollar corporation with a net income of $16.15 billion in 2015 and $32.520 billion in 2014. See Exxon Mobil Corp., Annual Report at 30 (Form 10-K)(Feb. 24, 2016)("Exxon Mobil Annual Report"). Exxon Mobil "has access to significant capacity of long-term and short-term liquidity," with internally generated funds to cover the majority of financial requirements. See Exxon Mobil Annual Report at 48. Acknowledging the number of lawsuits against it, Exxon Mobil states that it

> does not believe the ultimate outcome of any currently pending lawsuit against ExxonMobil will have a material adverse effect upon the Corporation's operations, financial condition, or financial statements taken as a whole. There are no events or uncertainties beyond those already included in reported financial information that would indicate a material change in future operating results or financial condition.

Exxon Mobil Annual Report at 52.

Energy's two insurance programs failing, and XTO Energy -- a major corporation -- being unable to satisfy a judgment.

Even if the Plaintiffs-in-Intervention are third-party beneficiaries to the Master Contract, and even if they have a separate interest in interpreting the Master Contract to waive subrogation, they have not shown that "disposing of the action may as a practical matter impair or impede" their ability to protect their interest. Fed. R. Civ. P. 24(a)(2). See Gen. Ins. Co. of Am. v. Clark Mali Corp., No. 08 C 2787, 2010 WL 807433, at *6 (N.D. Ill. Mar. 10, 2010)(Cole, M.J.)(denying intervention, because the movant did not meet all of rule 24(a)'s requirements). Unlike in Security Insurance Co. of Hartford v. Schipporeit, Inc., where the Seventh Circuit affirmed intervention, the Plaintiffs-in-Intervention do not suggest that XTO Energy has no assets to satisfy a judgment. See Sec. Ins. Co. of Hartford v. Schipporeit, Inc., 69 F.3d at 1380-81 (permitting a contractual third-party beneficiary to intervene into a declaratory judgment action to determine an insurance contract's validity when the only way the movant could collect damages was through the insurance policy, because the defendant in the underlying lawsuit had no other assets besides the insurance policy); Gen. Ins. Co. of Am. v. Clark Mali Corp., 2010 WL 807433, at *6 (describing Security Insurance Co. of Hartford v. Schipporeit, Inc., and explaining that the movant "would have had no source of payment even if it won its negligence case against Schipporeit in the state court"). In fact, XTO Energy has its own insurance program in addition to the Master Contract. Likewise, the Plaintiffs-in-Intervention have not suggested that XTO Energy will be unlikely to satisfy a potential judgment against it. See Genesis Ins. Co. v. Crowley, 2005 WL 3989772, at *3 (D. Colo. Aug. 31, 2005)(Coan, M.J.)(denying intervention, because "a contingent interest in insurance proceeds is too remote and speculative to satisfy the Rule"); Gen. Ins. Co. of Am. v. Clark Mali Corp., 2010 WL 807433, at *6 (denying

intervention, because the movant made no showing "that the defendants are in any type of financial difficulty or without assets").

The Tenth Circuit's broad view of sufficient interests does not change the fact that the Plaintiffs-in-Intervention have not shown that disposing of the case, as a practical matter, might impair their interest.  The Tenth Circuit views the interest test broadly to fulfill rule 24(a)'s purpose of ensuring that absentees will not be excluded from a case that will "substantially affect[] in a practical sense" their interests.  Fed. R. Civ. P. 24, advisory committee notes to 1966 amendment.  See San Juan Cty., Utah v. United States, 503 F.3d at 1195; WildEarth Guardians v. U.S. Forest Serv., 573, F.3d at 995 ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.").  As the situation stands right now, this case's disposition will not "substantially affect[] in a practical sense" the Plaintiffs-in-Intervention's interests.  Fed. R. Civ. P. 24, advisory committee notes to 1966 amendment.  The Plaintiffs-in-Intervention have not shown that this case's disposition will alter XTO Energy's ability to pay a judgment against it in the state litigation.[12]  Compare Gen Ins. Co. of Am. v. Rhoades, 196 F.R.D. 620, 625 (D.N.M. 2000)(Black, J.)(denying intervention, but recognizing that "[w]here the claimant's only real hope of recovery rests in establishing the existence of insurance coverage, courts have a strong tendency to grant the claimant's motion to intervene" (emphasis added)); St. Paul Fire and

---

[12]The Court is not placing a heavy burden on movants seeking to intervene when it requires them to introduce some indication that the defendant in the underlying litigation might not be able to pay an adverse judgment.  Generally, movants seeking to intervene can obtain evidence about insurance programs in discovery.  The Federal Rules of Civil Procedure requires parties to disclose all insurance agreements that might be available to satisfy a possible judgment.  See Fed. R. Civ. P. 26(b)(1)(A).  Obtaining some evidence whether XTO Energy has other insurance and assets available to pay a judgment against it in state court is therefore not a significant burden.

Marine Ins. Co. v. Summit-Warren Indus. Co., 143 F.R.D. 129, 134 (N.D. Ohio 1992)(Bell, J.)(allowing intervention when the intervenor's sole recourse would be against a defunct corporation and related persons with questionable assets if the insurer prevailed in the coverage case); N.H. Ins. Co. v. Greaves, 110 F.R.D. at 553 (allowing intervention because, if the insurer prevailed in denying coverage, the intervenor's sole recourse would be against the insured, who did not have sufficient assets to satisfy a judgment); Tudor Ins. Co. v. 1st Nat. Title Ins. Agency, LLC, 281 F.R.D. 513, 518 (D. Utah 2012)(Wells, M.J.)(denying intervention by a party with no judgment and a mere contingent interest in coverage litigation where there was no evidence that the alleged wrongdoer would not be able to satisfy a judgment obtained in the underlying case). Because XTO Energy has multiple insurance programs and will likely be able to satisfy any judgment, disposing of this case without the Plaintiffs-in-Intervention will not threaten to impair or impede their interest in obtaining a judgment in state court.  See Am. Ass'n of People with Disabilities v. Herrera, 257 F.R.D. at 254 (denying intervention because, "while she may have a protectable interest, she has not shown that interest to be endangered in this case").  Moreover, the Court has already interpreted the Master Contract as the Plaintiffs-in-Intervention request. See Memorandum Opinion and Order, filed March 11, 2016 (Doc. 82)("MOO").  Allowing intervention therefore fails to effectuate rule 24(a)'s purpose of protecting an absentee's interests.

Similarly, disposing of this case without the Plaintiffs-in-Intervention will not impair or impede their asserted interest in retaining potential insurance proceeds by denying Zurich Insurance subrogation or reimbursement.  As explained above, this case does not involve the subrogation issue that the Plaintiffs-in-Intervention raise.  See Tr. at 78:20-25 (arguing that the subrogation provisions involve "a totally separate Zurich policy, has never been raised by Zurich

or XTO in this case, [and] is not part of the motion for summary judgment"). The Plaintiffs-in-Intervention concede that the subrogation issue involves separate provisions in the Master Contract and "is a peripheral argument." Tr. at 66:7-21 (Sanders); id. at 54:19-25 (Sanders)(explaining that the subrogation issue "has not been raised by XTO"). To the extent the Court's interpretation of the Master Contract's indemnity provisions might have affected the subrogation provision's validity, the Court's disposition of the case will not impair the Plaintiffs-in-Intervention's interests: the Court interpreted the Master Contract not to violate the New Mexico Oilfield Anti-Indemnity Statute, and it gave the Plaintiffs-in-Intervention the opportunity to argue that public policy did not void the Master Contract. See MOO at 20-22. Moreover, the Plaintiffs-in-Intervention have neither settled the case nor obtained a judgment. Zurich Insurance cannot obtain funds in reimbursement or subrogation unless the Plaintiffs-in-Intervention have obtained a judgment or settlement. See Amica Mut. Ins. Co. v. Maloney, 1995-NMSC-059, ¶ 10, 903 P.2d 834, 839 (noting that the insured must hold the amount of the subrogation claim for the insurer's benefit and "must account for this amount after recovering from the tortfeasor" (emphasis added)). The Plaintiffs-in-Intervention therefore have not shown how their interest will be impaired by deciding the case without them. See Fifth Third Bank of W. Ohio v. United States, 52 Fed. Cl. 202, 204 (2002)(instructing that "intervention of right is proper only to protect those interests that are of such a *direct* and *immediate* character that the intervenor will either gain or lose by the *direct* legal operation and effect of the judgment")(emphasis in original)(internal quotation marks omitted); EEOC v. Eastern Airlines, Inc., 736 F.2d 635, 639 (11th Cir. 1984)(holding that, if the movant "can proceed with her own action independently of the [present] suit, then the settlement of the . . . suit cannot 'impair or impede' her ability to seek her own relief").

Nor will denying intervention impair the Plaintiffs-in-Intervention's rights to allege claims under § 59A-16-20 of the New Mexico Insurance Code.  Third-party beneficiaries to a contract may not bring such lawsuits until a court has entered judgment in the underlying case determining liability and damages, which has not happened.  See Hovet v. Allstate Ins. Co., 2004-NMSC-010, ¶ 26, 89 P.3d at 77 ("A third-party claimant's statutory cause of action against the insurer for unfair settlement practices must await the conclusion of the underlying negligence action between the claimant and the insured.").  Furthermore, the Plaintiffs-in-Intervention stated that their bad-faith claim against Zurich Insurance is based on Zurich Insurance's obligations, so it need not be litigated in federal court.  See Tr. at 55:17-25 (Sanders)("I don't think it's necessary for it to be litigated here.").  Accordingly, disposing of the case in the Plaintiffs-in-Intervention's absence will not impair or impede their interest.  See United States v. Northern Colo. Water Conservancy Dist., 251 F.R.D. 590, 601-02 (D. Colo. 2008)(Nottingham, J.)(concluding that disposing of the action would not impair the movant's ability to intervene, because the impairment "must result from some pending action of the court, and not from a court's mere refusal to consider a *new* claim upon petition").  Although the facts as they stand now indicate that the disposition of the case will not impair or impede the Plaintiffs-in-Intervention's interest at this time, if the facts change and the Plaintiffs-in-Intervention can make a showing that the case's disposition might impair their interests, they may file a new motion to intervene at a later time.[13]

---

[13]The Tenth Circuit and rule 24(a) direct courts to consider whether the case's disposition will affect the movant's rights in a practical sense.  See Fed. R. Civ. P. 24(a).  The practical interest at stake is the Plaintiffs-in-Intervention's inability to recover a judgment in state court by virtue of XTO Energy's inability to pay.  Considering the interest in this practical way leads the Court to focus less on the unlikely chain of contingencies that could lead to XTO Energy's inability to pay.  At this time, the chain of events that would have to occur to leave XTO Energy unable to satisfy a judgment appears exceedingly unlikely and impractical.

Finally, "[e]ven if an applicant satisfies the other requirements of Rule 24(a)(2), it is not entitled to intervene if its 'interest is adequately represented by existing parties.'" Tri-State Generation & Transmission Ass'n, Inc. v. New Mexico Pub. Regulation Comm'n, 787 F.3d 1072 (10th Cir. 2015)(quoting San Juan Cty., Utah v. United States, 503 F.3d at).  The Plaintiffs-in-Intervention concede that they share an interest with XTO Energy in having the Master Contract indemnification clauses declared valid.  See Reply at 8.  The Plaintiffs-in-Intervention argue that their interests diverge, because XTO Energy has asked them -- in a settlement conference as part of the state litigation -- to discount their claims to account for Air Tech's percentage of comparative fault.  Although XTO Energy and the Plaintiffs-in-Intervention held divergent viewpoints in the state litigation's settlement conference, they have an identical interest here: to enforce the relevant provisions of the Master Contract.  See San Juan Cty., Utah v. United States, 503 F.3d at 1206 (concluding that the existing party adequately represented the proposed intervenor, even though they held divergent interests regarding other issues not before the court, because they both had the same objective in the federal litigation).  "[E]ven though a party seeking intervention may have different 'ultimate motivation[s],' . . . where its objectives are the same, we presume representation is adequate." Tri-State Generation & Transmission Ass'n, Inc. v. New Mexico Pub. Regulation Comm'n, 787 F.3d at 1072.  Notably, the Plaintiffs-in-Intervention's proposed Complaint-in-Intervention asserts the same causes of action against Zurich Insurance that XTO Energy has already asserted: breach of contract, unfair practices, and a request for declaratory judgment.[14]  To the extent the Plaintiffs-in-Intervention had any additional arguments that they thought XTO Energy did not present to the Court regarding

---

[14]As stated earlier, although the Plaintiffs-in-Intervention raise the additional allegation that Zurich Insurance is not entitled to subrogation, see Complaint-in-Intervention at 8-14, XTO Energy does not take an adverse position on this issue.

summary judgment, the Court allowed them to file a brief against Zurich Insurance's Motion for Summary Judgment.  See Potential Plaintiffs-in-Intervention's Position Paper, filed March 7, 2016 (Doc. 77).  Accordingly, the Plaintiffs-in-Intervention do not show how XTO Energy, which is pursuing the same claims against Zurich Insurance that the Plaintiffs-in-Intervention seek to pursue, could possibly be inadequate to represent their interest.  If they can do so at a later time, however, by pointing to concrete points that show how XTO Energy's representation will be inadequate rather than mere speculation, they can file a new motion to intervene at a later time.

Moreover, XTO Energy has vigorously litigated the lawsuit.   The Plaintiffs-in-Intervention have not provided any evidence that XTO Energy will not continue to do so. Compare Sec. Ins. Co. of Hartford v. Schipporeit, Inc., 69 F.3d at 1380-81 (allowing the movant to intervene, because the defendant was about to allow a default judgment by failing to defend), with Gen. Ins. Co. of Am. v. Clark Mali Corp., 2010 WL 807433, at *6 (denying intervention, because the movant made no showing that "the defendants in this case may default or throw in the towel").   Accordingly, because XTO Energy will adequately represent the Plaintiffs-in-Intervention's interest, and because the case's disposition will not impair or impede the Plaintiffs-in-Intervention's interest, the Court denies the Motion to intervene under rule 24(a). See Gen. Ins. Co. of Am. v. Rhoades, 196 F.R.D. at 624-25 (denying intervention under rule 24(a) where, even assuming the intervenor's interest was sufficient to justify intervention, the intervenor and original party shared the same objective of establishing insurance coverage).  The Court therefore denies the Motion to intervene as a matter of right.

## II.  **THE COURT DENIES PERMISSIVE INTERVENTION.**

Rule 24(b) allows permissive intervention under the following conditions: (i) the application to intervene is timely; (ii) the applicant's claim or defense and the main action have a

question of law or fact in common; and (iii) intervention will not unduly delay or prejudice the adjudication of the original parties' rights.  See Forest Guardians v.  U.S. Dep't of Interior, 2004 WL 3426413, at *10-11.  As stated above, the Plaintiffs-in-Intervention's Motion is timely.

The Plaintiffs-in-Intervention share some questions of law and fact in common with the questions before the Court, such as whether the New Mexico Oilfield Anti-Indemnity Statute voids the Master Contract and whether the Defendants breached the Master Contract by refusing to defend XTO Energy.  In fact, their declaratory judgment and breach-of-contract claims largely duplicate XTO Energy's assertions that the Master Contract contains valid indemnification clauses that require Zurich Insurance to defend and indemnify XTO Energy.  Compare XTO Complaint ¶ 45, at 6 ("Air Tech and ATD have materially breached the MSC by refusing to defend XTO, as required by the MSC."), and id. ¶ 60, at 8-9 (requesting a declaration that the Master Contract valid and require Zurich Insurance to defend XTO Energy and reimburse it for its legal expenses), with Complaint-in-Intervention ¶ 55, at 9-10 (requesting a declaration that the Master Contract contains valid indemnification clauses requiring Zurich Insurance to indemnify XTO).   As explained above, however, XTO Energy adequately represents the Plaintiffs-in-Intervention's interests on these issues.  See City of Stillwell v. Ozarks Rural Elec. Co-op. Corp., 79 F.3d at 1043 (affirming denial of intervention under rules 24(a)(2) and 24((b) where intervenor failed to demonstrate that existing parties did not adequately represent its interest, and because intervention would unduly delay and prejudice the adjudication through the intervenor's introduction of new issues); Genesis Ins. Co. v. Crowley, 2005 WL 3989772, at *5 (denying a request for permissive intervention where the parties adequately represented the movant's interests so that intervention was unnecessary).

The Plaintiffs-in-Intervention raise new issues, however, that are not before the Court. They ask the Court to declare that Zurich Insurance waived its right to subrogation or reimbursement for workers compensation benefits, see Complaint-in-Intervention ¶ 55, at 9-10, and argue that Zurich Insurance breached § 59A-16-24 by collecting certain premiums in exchange for Zurich Insurance's waiver of subrogation or reimbursement, see Complaint-in-Intervention ¶ 76, at 12-13. See Zurich Response at 14 (arguing that the Plaintiffs-in-Intervention "assert allegations and claims not raised by the existing parties concerning a Zurich workers' compensation insurance policy that is completely separate from the CGL Policy at issue in this litigation"). These issues do not relate to the current litigation and would distract, rather than facilitate, the Court's resolution of the issues currently in the case. See City of Stillwell v. Ozarks Rural Elec. Co-op. Corp., 79 F.3d at 1043; Arney v. Finney, 967 F.2d 418, 421-22 (10th Cir. 1992)(directing courts to deny intervention if it would "clutter the action unnecessarily" without aiding the current parties or issues). Furthermore, determining whether Zurich Insurance waived subrogation and reimbursement will also require the parties to engage in further discovery and increase litigation costs. See Tr. at 65:18-21 (Sanders)("I have to say that it may involve the need for some discovery."); Tri-State Generation & Transmission Ass'n, Inc. v. New Mexico Pub. Regulation Comm'n, 787 F.3d at 1075 (affirming the denial of intervention where it would burden the existing parties with discovery); Tudor Ins. Co. v. 1st Nat. Title Ins. Agency, LLC, 281 F.R.D. at 519 (denying permissive intervention where intervention would merely increase litigation costs). Contrary to the Plaintiffs-in-Intervention's suggestion, this litigation is not "in its nascency." Motion at 16. The Court has already ruled on Zurich Insurance's Motion for Summary Judgment. See MOO at 1. Introducing the Plaintiffs-in-Intervention's additional issues would therefore unnecessarily complicate and delay these

proceedings without aiding the current parties, thereby causing prejudice.   See F.D.I.C. v. Jennings,[15] 816 F.2d 1488, 1491-92 (10th Cir. 1987)(affirming the denial of intervention where, although the movant and the existing party both argued that the defendant acted negligently, "intervention would interject new issues" and would burden judicial efficiency); Empire Fire & Marine Ins. Co. v. Timeline Recovery, LLC, 2006 WL 2345005, at *1-2 (denying intervention under rules 24(a)(2) and 24(b) in declaratory judgment coverage action where intervention would unnecessarily complicate and unduly delay adjudication of the original parties' rights by introducing additional issues).

In addition to delaying the proceedings unnecessarily, the Plaintiffs-in-Intervention would not likely add value to the existing issues before the Court.   Permissive intervention is not as appropriate if existing parties adequately represent the movant's interest.   See 6 Moore's Federal Practice § 24.10(2)(c); New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co., 732 F.2d 452, 472 (5th Cir. 1984).   XTO Energy has vigorously argued that the Master Contract should be upheld.   The Plaintiffs-in-Intervention repeated those same arguments at the hearing and in their Plaintiffs-in-Intervention's Position Paper.   At this time, they have not identified any sound arguments to enforce the Master Contract that XTO Energy has not raised.[16]   Because

---

[15]In Federal Deposit Insurance Corp. v. Jennings, the Tenth Circuit recognized that the movant's claims would overlap with the existing party's claims.   See 816 F.2d at 1492 n.5. Nevertheless, because the movant's claims would require the Court to decide new issues, it affirmed the denial of intervention.   See 816 F.2d at 1492-93.

[16]The Plaintiffs-in-Intervention contended that the Master Contract's waiver of subrogation or reimbursement provision constituted a reason to deny summary judgment.   See Tr. at 66:8-21 (Sanders).   This argument does not counsel for or against summary judgment and does not affect the Master Contract's interpretation.   See Tr. at 66:25-67:8 (Court).   Rather, the validity of the Master Contract's indemnity provisions affects the subrogation provision's validity.   Accordingly, the subrogation provision is not an argument against summary judgment, but an argument that the Plaintiffs-in-Intervention have an interest in the case.   See Tr. at 66:25-67:8 (Court).   Consequently, the Court considers the argument more of a consequence of its

XTO Energy adequately represents the Plaintiffs-in-Intervention's interest, intervention is unnecessary.  See United States v. Northern Colo. Water Conservancy Dist., 251 F.R.D. at 601-02 (denying intervention under rules 24(a)(2) and 24(b) where the movant did not establish that its input would "make a significant and useful contribution to the development of the underlying factual and legal issues"); id. at 601-02 (concluding that the movant's lack of adequate representation was irrelevant when the court's disposition of the case would not affect its interests); Genesis Ins. Co. v. Crowley, 2005 WL 3989772, at *5 (denying intervention where the party's and the movant's interests were aligned).  Finally, the Plaintiffs-in-Intervention may pursue their additional claims in the New Mexico Worker's Compensation Administration or in state court.

**IT IS ORDERED** that the Plaintiffs-in-Intervention's First Amended Motion to Intervene and Memorandum in Support, filed December 20, 2015 (Doc. 42), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Bradford C. Berge
Holland & Hart LLP
Santa Fe, New Mexico

-- and --

Jose A. Ramirez
Holland & Hart LLP
Greenwood Village, Colorado

---

decision rather than an argument against summary judgment that XTO Energy failed to raise.  As stated above, XTO Energy raised every available argument against summary judgment, thereby fully representing the Plaintiffs-in-Intervention's interest.

-- and --

Katie K. Custer
Holland & Hart LLP
Denver, Colorado

> *Attorneys for Plaintiff XTO Energy, Inc.*

Sam L. Fadduol
Joshua K. Conaway
Fadduol, Cluff, Hardy & Conaway, P.C.
Albuquerque, New Mexico

-- and --

Maureen A. Sanders
Sanders & Westbrook, P.C.
Albuquerque, New Mexico

> *Attorneys for Plaintiffs-in-Intervention Scott Manley, Shanna Manley, Jose Betancur, and Virginia Betancur*

Terry R. Guebert
Robert Gentile
Guebert Bruckner, P.C.
Albuquerque, New Mexico

> *Attorneys for Defendant ATD, LLC*

James H. Johansen
Shawn S. Cummings
Amy Elizabeth Headrick
Rheba Rutkowski
Butt, Thornton & Baehr, P.C.
Albuquerque, New Mexico

> *Attorneys for Defendant and Third-Party Plaintiff Zurich American Insurance Company*