## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

XTO ENERGY, INC.,

       Plaintiff,

vs.                                                                      No. CIV 14-1021 JB/SCY

ATD, LLC, AIR TECH DRILLING, INC. and
ZURICH AMERICAN INSURANCE COMPANY,

       Defendants.

ZURICH AMERICAN INSURANCE COMPANY,

       Third-Party Plaintiff,

vs.

BASIC ENERGY SERVICES, INC.,
WEATHERFORD ARTIFICIAL LIFT SYSTEMS, INC.,
WEATHERFORD INTERNATIONAL, INC., and,
WEATHERFORD U.S., L.P.,

       Third-Party Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Holland & Hart's Bill of Costs, filed April 15, 2016 (Doc. 88)("Motion"). The Court held a hearing on July 27, 2016. The primary issue is what constitutes a reasonable hourly rate for attorney's fees for high-end insurance work in Albuquerque, New Mexico in 2016. After an extensive review of local rates, the Court concludes that $350.00 is a reasonable hourly rate for experienced partners doing high-end, complicated insurance work, while a reasonable rate for experienced associates is $200.00. The Court also determines that the number of hours that Plaintiff XTO Energy, Inc.'s counsel

Holland & Hart, LLP spent writing motions was reasonable.  Accordingly, the Court grants in

part and denies in part the Motion.

## FACTUAL BACKGROUND

This case involves numerous parties who contracted with each other to provide services

and insurance.[1]  Because the Court has previously given a detailed factual background in several

prior opinions, the Court will only briefly describe the relevant facts here.  See XTO Energy, Inc.

v. ATD, LLC, 2016 WL 1158073 (D.N.M. March 11, 2016)(Browning, J.); XTO Energy, Inc. v.

ATD, LLC, 2016 WL 1730171 (D.N.M. April 1, 2016)(Browning, J.)("April 1 MOO"); XTO

Energy, Inc. v. ATD, LLC, 2016 WL 3148399 (D.N.M. April 18, 2016)(Browning, J.); XTO

Energy, Inc. v. ATD, LLC, ― F. Supp. 3d ―, 2016 WL 3135645 (D.N.M. May 20,

2016)(Browning, J.).  XTO Energy is an oil-and-gas well operator that contracts with various

contractors to perform well operations.  See MSJ at 1; MSJ Response ¶ A, at 2.  Defendant Air

Tech Drilling, Inc., a contractor, is a New Mexico corporation based in Bloomfield, New Mexico

and formed on June 9, 2006.  See MSJ ¶¶ 7, 10, at 4; MSJ Response ¶ A, at 2.[2]  Air Tech's

---

[1]The Court takes its facts from Defendant Zurich American Insurance Company's Motion for Summary Judgment, filed November 13, 2015 (Doc. 32)("MSJ"), Plaintiff XTO Energy Inc.'s Memorandum in Support of Response to Defendant Zurich American Insurance Company's Motion for Summary Judgment, filed December 21, 2015 (Doc. 44)("MSJ Response"), and the Defendant Zurich American Insurance Company's Reply in Support of Motion for Summary Judgment, filed February 1, 2016 (Doc. 59)("MSJ Reply").  The Court has described this case's facts in prior opinions.  See XTO Energy, Inc. v. ATD, LLC, 2016 WL 1158073, at *1-5 (D.N.M. March 11, 2016)(Browning, J.)("MSJ MOO"); XTO Energy, Inc. v. ATD, LLC, 2016 WL 1730171, at *1-5 (D.N.M. April 1, 2016)(Browning, J.)("Motion to Intervene MOO").

[2]Throughout its MSJ Response, XTO Energy does not distinguish between Air Tech and ATD, LLC, using the phrase "Air Tech/ATD" to refer to both entities.  E.g., MSJ Response ¶ J, at 4.  Zurich Insurance disputes all of XTO Energy's factual assertions that suggest Air Tech and ATD, LLC are the same entity.  See MSJ Reply ¶ B, at 3.  Zurich American Insurance Co. contends that Air Tech and ATD, LLC are not the same entity, and provides documents to support its objection.  See Reply ¶ B, at 3; New Mexico Secretary of State Office, Information on

corporate status was revoked on June 28, 2010.  See MSJ ¶ 7, at 4.  Defendant ATD, LLC is a New Mexico limited liability company based in Hobbs, New Mexico, originally formed as a New Mexico corporation on September 22, 2006, and converted into a limited liability company on August 27, 2009.  See MSJ ¶ 8, at 4.  Zurich American Insurance Co. is an insurance company that provides insurance for Air Tech.  See MSJ ¶ 19, at 6.

ATD, LLC employed Scott Manley and Jose Betancur, who were working at the XTO Energy Well site on November 8, 2012.  See MSJ ¶ 9, at 4.  On November 8, 2012, an accident occurred at a well in Eddy County, New Mexico, resulting in a fire that injured Manley and Betancur.  See MSJ ¶ 1, at 2; Response ¶ J, at 4.  Scott Manley and Shanna Manley ("the Manleys"), as well as Jose and Virginia Betancur ("the Betancurs"), individually and as Next Friend of Vanessa B. Betancur, Valerie Betancur, and Jose Betancur, minors, filed litigation in state court against XTO Energy, Weatherford Artificial Lift Systems, Inc., Weatherford International, Inc., Weatherford U.S., LP (collectively, "Weatherford"), Basic Energy Services, Inc., BOS Roustabout Service, LLC, Gabriel Valdez, and Randy Green.  See MSJ ¶¶ 1-2, at 2; Response ¶¶ M-N, at 4.

On November 10, 2014, XTO Energy filed a federal lawsuit asserting that the Defendants breached their agreements with XTO Energy by refusing to defend XTO Energy against the

---

Air Tech Drilling, Inc., filed November 13, 2015 (Doc. 33-1)(demonstrating that: (i) Air Tech's corporate status was revoked on June 28, 2010; (ii) Air Tech was a New Mexico corporation based in Bloomfield, New Mexico, formed on June 9, 2006; and (iii) ATD, LLC was formed as a corporation on September 22, 2006, based in Hobbs, New Mexico and converted to a limited liability company on August 27, 2009).  Because Zurich Insurance presents credible evidence that Air Tech and ATD, LLC are not the same entity, the Court deems it disputed whether they are the same entity.  While the issue is disputed, it is not material to the current dispute.  The Court will therefore treat Air Tech and ATD, LLC as distinct entities.  See D.N.M.LR-Civ. 56(b).  This adoption of terminology does not determine that Air Tech and ATD, LLC are separate entities, as that determination is not relevant here.

Manley and Betancur litigation pending in state court.  See Complaint for Breach of Contract, Unfair Practices and Declaratory Relief, filed November 10, 2014 (Doc. 1)("XTO Complaint").

## PROCEDURAL BACKGROUND

The current Motion arises in response to the Court's award of costs and fees to XTO Energy.  Below, the Court will summarize the motions giving rise to the award of costs and fees. The Court will then summarize the briefing on the current Motion.

### 1. The Earlier Litigation.

In the XTO Complaint, XTO Energy alleges that "Air Tech and ATD, LLC breached contractual duties under a Master Service Contract to defend XTO against the claims asserted in the Manley and Betancur Complaints."  MSJ ¶ 6, at 3.  It further asserts that Zurich Insurance breached its defense and reimbursement obligations to XTO Energy under the commercial general liability policy that Zurich Insurance issued to Mesa Well Servicing.  See MSJ ¶ 6, at 3-4.  In Zurich Insurance's Answer, it raised thirteen affirmative defenses, one of which states: "Plaintiff's counsel's actions in refusing to agree to a reasonable hourly rate of $220.00 for attorney's fees for Plaintiff's counsel, and Plaintiff's demand for an unreasonable rate of $400.00 per hour for attorney's fees . . . may constitute comparative bad faith by Plaintiff."  Defendant Zurich American Insurance Company's Amended Answer and Affirmative Defenses to Plaintiff's Complaint for Breach of Contract, Unfair Practices and Declaratory Judgment ¶ 12, at 13, filed April 20, 2015 (Doc. 15)("Answer").

On September 18, 2015, Zurich Insurance issued its first set of discovery requests.  It requested XTO Energy produce "any agreements between Holland and Hart, LLP" -- the law firm representing XTO Energy -- "and any insurance company regarding rates for legal services for the past five (5) years, redacting any privileged information," and "any billing documents for services provided by Holland and Hart, LLP related to the defense of an insured at the request of

an insurance company for the past five (5) years, redacting any privileged information." Motion to Quash or Motion for Protective Order Regarding Subpoena to Nonparty Holland & Hart LLP, filed December 1, 2015 (Doc. 36)("Motion to Quash"). On November 19, 2015,[3] Zurich Insurance issued a subpoena requesting Holland & Hart to produce its billing records and agreements relating to its representation of other clients. See Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action, filed December 1, 2015 (Doc. 36-2)("Subpoena").

In December, 2015, the parties each filed a discovery motion. XTO Energy sought to quash Zurich Insurance's subpoena to Holland & Hart. The subpoena sought billing documents and rates relating to Holland & Hart's other insurance company clients, including all of Holland & Hart's agreements with any insurance company regarding rates for legal services over the past five years. See Motion to Quash at 1-2. Holland & Hart argued the subpoena's impropriety, and requested that the Court award Holland & Hart reasonable attorney's fees for the time spent responding to the subpoena. See Motion to Quash at 6-7. On December 2, 2015, Zurich Insurance filed a motion seeking to compel the discovery that XTO Energy sought to quash -- Holland & Hart's hourly rates and client agreements. See Zurich American Insurance Company's Motion to Compel Discovery from Plaintiff, filed December 2, 2015 (Doc. 37)("Motion to Compel").

---

[3]The Court has addressed other motions not directly relevant to this opinion. On November 11, 2015, Zurich Insurance filed the MSJ, asking the Court to declare the Master Contract invalid under New Mexico's Oilfield Anti-Indemnity Statute. See MSJ at 1-2. On March 11, 2016, the Court denied Zurich Insurance's request for summary judgment. See MSJ MOO at 1. On March 25, 2016 Zurich Insurance asked the Court to reconsider its decision. See Zurich American Insurance Company's Motion for Reconsideration; Alternatively, for Clarification and for Language Permitting Interlocutory Appeal or Certification to the New Mexico Supreme Court (re: Doc. 82), filed March 25, 2016 (Doc. 83). The Court did not change its ruling. See XTO Energy, Inc. v. ATD, LLC, ⸺ F. Supp. 3d ⸺, 2016 WL 3135645, at *1.

On April 1, 2016, the Court denied Zurich Insurance's Motion to Compel. It concluded that Zurich Insurance's request asked for documents outside of XTO Energy's possession, custody, or control. See April 1 MOO, 2016 WL 1730171, at *1. Further, the Court granted XTO Energy's Motion to Quash the subpoena for two reasons. See April 1 MOO, 2016 WL 1730171, at *26. First, the subpoena did not comply with rule 45 of the Federal Rules of Civil Procedure's requirements, which made it unenforceable. See April 1 MOO, 2016 WL 1730171, at *26, 32 ("Zurich Insurance did not comply with existing law pursuant to rule 26(g)(1)(B), because its Subpoena was facially and procedurally invalid."). Second, the Court concluded that the subpoena imposed an undue burden on Holland & Hart. See April 1 MOO, 2016 WL 1730171, at *26-31 (noting that the information Zurich Insurance sought was "minimally relevant," imposed a significant burden, and may not have been necessary had Zurich Insurance searched its own records).

The Court observed that Holland & Hart "attempted to confer with Zurich in good faith to avoid the expense of this motion and the undue burden responding to the Subpoena would impose," but Zurich Insurance "did not attempt to narrow the request to seek only those documents in XTO Energy's control; it did not send an interrogatory seeking only rates in some cases." April 1 MOO, 2016 WL 1730171, at *31. The Court noted that Zurich Insurance did not show "that it attempted to discover the information it seeks by searching its own records or through any other means before sending the Subpoena." April 1 MOO, 2016 WL 1730171, at *32. Accordingly, the Court concluded that the subpoena imposed an undue burden on Holland & Hart. If an attorney does not comply with rule 45(d)(1)'s duty to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," the Court "must enforce this duty and impose an appropriate sanction -- which may include lost earnings and

- 6 -

reasonable attorney's fees." Fed. R. Civ. P. 45(d)(1). See April 1 MOO, 2016 WL 1730171, at

*31. "[B]ecause rule 45 requires the Court to impose sanctions when a subpoena imposes an

undue burden on the responding party," the Court awarded costs and fees to Holland & Hart.

April 1 MOO, 2016 WL 1730171, at *1.

    **2.**    <u>**The Motion.**</u>

Holland & Hart requests $10,526.50 for the time spent responding to Zurich Insurance's

subpoena. See Motion at 1-2. Holland & Hart submitted a time sheet detailing the amount due

for various tasks.

| Timekeeper | Date | Hours | Rate | Amount | Narrative |
|---|---|---|---|---|---|
| Ramirez, Joe A. | 11/23/2015 | 1.00 | 385.00 | $385.00 | Review Zurich's subpoena on H&H to produce documents; telephone conference with BCBerge regarding subpoena; |
| Ramirez, Joe A. | 11/25/2015 | 2.90 | 385.00 | $1,116.50 | Meet and confer with opposing counsel; review subpoena issued by Zurich to H&H; review research for motion to quash; |
| Custer, Katie K. | 11/25/2015 | 4.40 | 295.00 | $1,298.00 | Conduct analysis of motion to quash subpoena directed at law firm for potential impropriety, irrelevance, and failure to comply with Rule 45 notice requirements; |
| Custer, Katie K. | 11/29/2015 | 4.90 | 295.00 | $1,445.50 | Draft motion to quash, or in the alternative, motion for protective order, regarding subpoena issued to H&H; |
| Custer, Katie K. | 11/30/2015 | 1.00 | 295.00 | $295.00 | Draft motion to quash subpoena; |
| Ramirez, Joe A. | 11/30/2015 | 1.20 | 385.00 | $462.00 | Review correspondence from Mr. Johansen; continue work on motion to quash; meet and confer with Mr. Johansen; review correspondence from Mr. Goss; |
| Ramirez, Joe A. | 12/1/2015 | 0.30 | 385.00 | $115.50 | Finalize and file motion to quash; |
| Custer, Katie K. | 12/16/2015 | 1.70 | 295.00 | $501.50 | Analysis of Zurich's response to the motion to quash the subpoena to H&H; |
| Custer, Katie K. | 12/18/2015 | 4.00 | 295.00 | $1,180.00 | Draft reply in support of motion for protective order regarding subpoena to H&H; |
| Custer, Katie K. | 12/21/2015 | 2.70 | 295.00 | $796.50 | Draft reply in support of motion to quash subpoena to H&H; |
| Custer, Katie K. | 12/22/2015 | 0.30 | 295.00 | $88.50 | Revise reply in support of motion to quash subpoena served on H&H; |
| Ramirez, Joe A. | 12/22/2015 | 0.70 | 385.00 | $269.50 | Continue work on pleadings (reply to motion to quash and response to motion to compel); |
| Ramirez, Joe A. | 1/4/2016 | 0.80 | 395.00 | $316.00 | Review and final edit reply brief; file reply; |
| Custer, Katie K. | 2/23/2016 | 0.50 | 305.00 | $152.50 | Review filings on motion to compel and motion to quash in preparation for hearing; |
| Custer, Katie K. | 2/29/2016 | 5.40 | 305.00 | $1,647.00 | Travel to Albuquerque for oral arguments; prepare for oral arguments; |
| Custer, Katie K. | 3/1/2016 | 1.50 | 305.00 | $457.50 | Prepare for oral arguments; Attend hearing on motions and argue motions; |
| | | | **Total:** | **10,526.50** | |

    **3.**    <u>**The Response.**</u>

On April 29, 2016, Zurich Insurance objected to Holland & Hart's hourly rates as

"excessive and unreasonable as a matter of law." Zurich American Insurance Company's

Opposition to Holland & Hart's Bill of Costs and Authorities in Support at 1, filed April 29,

2016 (Doc. 93)("Response"). Zurich Insurance notes that "New Mexico is a relatively poor

state, with some of the lowest hourly rates in the country." Response at 4. Zurich Insurance

provides numerous rates that federal courts have authorized as reasonable in recent New Mexico

cases.  See Response at 7-8.  Zurich Insurance argues that, although the Court awarded $300.00 per hour for a complicated class action securities case involving five years of litigation, "the factual posture of that case was markedly distinct from that of this case."  Response at 5.

Zurich Insurance urges the Court to consider the "underlying principles of fairness." Response at 9.  It therefore asks the Court "to reduce the proposed hourly rates for Mr. Ramirez and Ms. Custer," the two Holland & Hart attorneys representing XTO Energy, "as the respective rates of $385.00 and $310.00 are unreasonable and excessive as a matter of law given the skill, experience and relative absence of legal complexity in the nature of the matter handled." Response at 12.  In the alternative, Zurich Insurance asks the Court to "reduce the total number of billable hours that will be multiplied against the proposed rates, to arrive at a reasonable lodestar amount that more accurately reflects the customary and prevailing attorney's fees charged by practitioners in the District of New Mexico."  Response at 12.

### 4.    **The Reply**.

Holland & Hart replied on May 23, 2016, arguing that its fees are reasonable and that it spent a reasonable number of hours.  See Holland & Hart's Reply in Support of Bill of Costs at 1, filed May 23, 2016 (Doc. 101)("Reply").  Holland & Hart argues that the tasks documented in its Time Sheet were "all necessary to quash the subpoena."  Reply at 4.  It states that it had to "research[] and analyze[] its options, confer[] with Zurich about the subpoena, file[] the Motion a [sic] Quash and a reply in support, and argue[] the motion."  Reply at 3-4.  Holland & Hart asserts that the Court should not reduce the hours it expended "in light of Holland & Hart's complete success" in quashing the subpoena.  Reply at 4 (citing Hensley v. Eckerhart, 461 U.S. 424, 435-36 (1983)("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee…")).  Regarding its rates, Holland & Hart concedes that its rates are "on the higher end," but argues that they are "within the range of rates courts have approved in

the District of New Mexico."  Reply at 5.  It argues that the cases Zurich Insurance cites that approve lower rates are "several years old."  Reply at 5.  Finally, Holland & Hart contends that the complicated subject matter of this case justifies its rates.  See Reply at 5.

**5.      The Hearing.**

The Court held a hearing on July 27, 2016.  See Transcript of Hearing (taken July 27, 2016)("Tr.").[4]  The Court convened to discuss the proposed scheduling order, but heard argument on the Bill of Costs.  See Tr. at 2:20-4:8 (Court)("[W]e're here for a scheduling conference.  If you wanted to turn it into a hearing on the bill of costs, we can do that.").[5]  The Court observed that this case does not resemble a "typical insurance automobile case," so it would not examine too many basic insurance defense cases in ascertaining a reasonable hourly rate.  Tr. at 9:20-23 (Court).  Instead, the Court stated that it would consider high-end insurance coverage cases.  See Tr. at 10:8-11 (Court).

Holland & Hart stated that it requests $285.00 an hour for Ms. Custer's work in 2015 and $295.00 for her work in 2016.  See Tr. at 15:23-25 (Custer).  It requests $385.00 for Mr. Ramirez' work in 2015, and $395.00 for his work in 2016.  See Tr. at 15:23-25 (Custer).  Custer agreed that the Court should determine whether the rates are reasonable by considering prevailing market rates for attorneys practicing in the District of New Mexico.  See Tr. at 16:7-18 (Court, Custer).  The Court asked whether Holland & Hart could "point to a case that's awarded right at $400 for high-end insurance work."  Tr. at 16:25-17:1 (Court).  Holland & Hart

---

[4]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

[5]The Court observed that the Motion had been filed as a Bill of Costs rather than a motion for fees.  See Tr. at 3:5-9 (Court).  Because Holland & Hart did not formally label its Bill of Costs as a motion, the Court was initially unaware that the filing warranted judicial attention.  See Tr. at 3:2-9 (Court).  The Court explained that, typically, the Clerk of Court rules on bills of costs after a trial, but because the case was still ongoing, the Clerk of Court did not immediately address the issue.  See Tr. at 3:2-20 (Court).

could not identify a case awarding $400.00 an hour, but cited Chavez v. Chavez, No. CIV 13-1047 (D.N.M. April 20, 2015)(Parker, J.)(Doc. 116)("Chavez"), in which the Honorable James A. Parker, United States District Judge for the District of New Mexico, awarded fees based on a $425.00 per hour rate.  See Tr. at 17:2-7 (Custer).  The Court expressed its concern that Chavez did not involve high-end insurance work, and that neither party included cases or affidavits from attorneys in the District of New Mexico regarding rates for this work.  See Tr. at 18:2-13 (Court). Zurich Insurance noted that "it may be appropriate to get some affidavits" regarding reasonable hourly rates for high-end insurance work in the District of New Mexico.  Tr. at 21:25-22:5 (Johansen).

Zurich Insurance then addressed Holland & Hart's hourly rates.  See Tr. at 22:2-9 (Johansen).  Zurich Insurance asserted that attorneys practicing in Denver, Colorado -- where Ms. Custer and Mr. Ramirez practice -- charge much higher rates than attorneys in New Mexico, where the litigation is occurring.  See Tr. at 22:2-9 (Johansen)("So the hourly rate here really is not nearly as high as it is in Denver, and especially with regard to insurance defense work."). Zurich Insurance's attorney, James Johansen, stated that he bills Zurich Insurance $185.00 an hour for his work on this case.  See Tr. at 22:5-7 (Johansen).  Mr. Johansen explained that he is "the second senior partner" at Butt, Thornton & Baehr, P.C., "so [his] hourly rates are about as high as anyone" at the law firm.  Tr. at 22:13-17 (Johansen).  Mr. Johansen asserted that the highest he has ever charged an insurance company is $225.00 an hour.  See Tr. at 22:21-22 (Johansen).  Johansen described how the financial crisis in 2008 and 2009 has put downward pressure on rates that law firms in Albuquerque can charge insurance companies.  See Tr. at 23:6-18 (Johansen).  He observed that it is no longer the case that firms can increase their rates every year.  See Tr. at 23:15-22 (Johansen)("I don't think rates have gone up hardly at all since

the financial crisis, 2008, 2009."); id. at 23:19-21 (Johansen)("The days of Paul Butt[6] in the 1980s getting a raise every year are long gone with the insurance industry.").  Zurich Insurance stated that it did not dispute the "actual work or the amount of work" Holland & Hart performed. Tr. at 24:23-25:3 (Court, Johansen).

The Court then asked counsel for Basic Energy, Andrew Curtis of Lubbock, Texas, what he charged for insurance defense work.  See Tr. at 27:23-28:9 (Court).  Mr. Curtis stated that, although Lubbock rates are slightly lower than Albuquerque rates, he charges Basic Energy $200.00 an hour because it is a routine client, which is slightly lower than his standard commercial rate of $235.00.  See Tr. at 28:10-17 (Curtis).  Mr. Curtis echoed Mr. Johansen's sentiment that competition has driven down rates for insurance work.  See Tr. at 28:23-29:1 (Curtis).  Michael Jasso, counsel for ATD, LLC, reiterated Mr. Johansen's comments regarding the downward pressure on rates for insurance work.  See Tr. at 28:17-23 (Jasso).  Mr. Jasso stated that, for complex commercial litigation, senior partners charge $175.00 to $185.00 an hour, while associates charge $150.00.  See Tr. at 30:3-5 (Jasso).  Finally, Matthew Byers, counsel for Weatherford, stated that his law firm charges as low as $140.00 an hour to as high as $240.00 an hour for insurance work in Carlsbad, New Mexico.  See Tr. at 31:4-9 (Byers).  Mr. Byers asserted that Michael Lemoine, who also represents Weatherford as a routine client, is charging $225.00 an hour for this case.  See Tr. at 31:10-16 (Byers).  Mr. Byers affirmed that $225.00 was his top-end commercial rate.  See Tr. at 31:17-19 (Byers, Court).

Holland & Hart added that insurance companies can often negotiate lower rates, because they bring a large volume of business to a law firm.  See Tr. at 28:7-13 (Custer).  It explained

---

[6]Paul Butt was a prominent lawyer in Albuquerque, New Mexico.  See Paul Butt, UNM School of Law, http://lawschool.unm.edu/alumni/community/memoriam/paul_butt.php.   Mr. Butt founded the Albuquerque law firm Butt, Thornton & Baehr.

that the rates that the other attorneys in this case charge involve such negotiated lower rates in exchange for a high volume of business.  See Tr. at 32:7-13 (Custer).  Holland & Hart argued "that's not what Holland & Hart is dealing with XTO."  Tr. at 32:13-14 (Custer).  See id. at 33:9-10 (Custer)("[I]t wasn't a negotiated panel rate at that time.").  It argued that Holland & Hart was not offered a high volume of litigation and therefore charged its usual rates.  See Tr. at 32:7-33:10 (Custer).  Regarding the work the case involves, Holland & Hart asserted that it is understandable to consider the work on this case insurance defense work "given the context that we're in now," but maintained that the original work in the state litigation did not necessarily contemplate insurance work.  Tr. at 33:5-9 (Custer).  With respect to the state litigation, Holland & Hart explained that XTO Energy hired Holland & Hart directly, and then Zurich Insurance approved Holland & Hart's representation.  See Tr. at 33:7-21 (Custer).  Holland & Hart noted that the state litigation "was a complex case."  Tr. at 32:21-24 (Custer).

**6.      The Affidavits and Supplemental Filings.**

On August 2, 2016, both parties submitted supplemental affidavits supporting their respective positions regarding a reasonable hourly rate in New Mexico.  See Notice of Supplemental Declarations in Support of Bill of Costs, filed August 2, 2016 (Doc. 117); Zurich American Insurance Company's Notice of Supplemental Affidavits Regarding Holland & Hart's Bill of Costs, filed August 2, 2016 (Doc. 118).

In support of Holland & Hart, Daymon Ely states that, based on his experience practicing law in New Mexico for nearly thirty-four years, Holland & Hart's rates are reasonable.  See Declaration of Daymon Ely ¶¶ 2-3, at 1-2, filed August 2, 2016 (Doc. 117-1)("Ely Aff.").  Mr. Ely focuses his practice "on bringing and prosecuting legal malpractice suits against attorneys."  Ely Aff. ¶ 2, at 1.  Mr. Ely recites Mr. Ramirez' and Ms. Custer's backgrounds, explaining their experience in commercial litigation in general, and insurance litigation in particular.  See Ely

Aff. ¶¶ 4-5, at 2.  Mr. Ely concludes that their rates "are justified by the subject matter of this case and the Motion to Quash that is presently at issue."  Ely Aff. ¶ 6, at 2.

David A. Freedman also submits an affidavit on Holland & Hart's behalf.  Freedman is "a founding member of the firm Freedman Boyd Holland Goldberg Urias & Ward, P.A.," where he has practiced law in New Mexico since 1973.  Declaration of David A. Freedman, filed August 2, 2016 (Doc. 117-2)("Freedman Aff.").  Mr. Freedman's practice focuses on complex commercial litigation, securities and antitrust litigation, criminal defense, personal injury, wrongful death, and products liability.  See Freedman Aff. ¶ 2, at 1-2.  Mr. Freedman described Mr. Ramirez' and Ms. Custer's education and experience.  See Freedman Aff. ¶¶ 4-5, at 2.  Mr. Freedman asserts that Mr. Ramirez' rates "are within the reasonable range for law firm partners with similar years of experience and specialized expertise practicing in the relevant New Mexico legal market."  Freedman Aff. ¶ 5, at 2-3.  He notes that Ms. Custer's rates "are reasonable, although at the high end, for senior associates practicing complex commercial litigation in the relevant New Mexico legal market."  Freedman Aff. ¶ 4, at 2.

Greg Biehler submits an affidavit supporting Zurich Insurance's position.  See Affidavit of Greg Biehler, filed August 2, 2016 (Doc. 118-1)("Biehler Aff.").  Mr. Biehler has practiced law in New Mexico since 1984, and is currently a partner at Lewis Brisbois Bisgaard & Smith LLP.  See Biehler Aff. ¶¶ 1-2, at 1-2.  He focuses his practice on employment litigation, insurance defense, commercial and catastrophic injury cases, products liability, civil rights, professional liability, and insurance coverage, and has "tried in excess of 150 jury trials."  Biehler Aff. ¶¶ 3-4, at 1-2.  Mr. Biehler represents defendants in cases involving catastrophic injuries occurring at oil wells -- the situation involved in the underlying Manley and Betancur litigation for which Zurich Insurance retained Holland & Hart.  See Biehler Aff. ¶ 5, at 2.  When

Mr. Biehler represents defendants in these cases, his "standard hourly rate is $185 per hour," which "is a standard hourly rate charged by attorneys defending Defendants in a catastrophic injury case occurring in the oil fields."  Biehler Aff. ¶ 6, at 2.  He asserts that associate rates "for this type of litigation are in the range of $165 per hour."  Biehler Aff. ¶ 7, at 2.  Finally, Mr. Biehler states that his standard hourly rate for high-end insurance coverage cases "is between $230 and 240 per hour," while associate rates "are in the range of $175 to $200" an hour. Biehler Aff. ¶¶ 10-11, at 2.

On August 3, 2016, XTO Energy filed a Response to Zurich's Notice of Supplemental Affidavits, filed August 3, 2016 (Doc. 119)("Response to Supp. Aff.").  It asserts that Zurich Insurance's affidavit "addresses only negotiated *panel rates* for *insurance defense* or representation of *insurance companies*."  Response to Supp. Aff. at 1 (emphasis in original). XTO Energy explains that Holland & Hart "does not serve as panel counsel and generally does not provide legal services for negotiated panel rates," so "[p]anel rates are not the proper measure for all attorney rates."  Response to Supp. Aff. at 1.  XTO Energy also criticizes Zurich Insurance's affidavit for stating only what Mr. Biehler's law firm charges rather than addressing "the range of reasonable rates at other firms."  Response to Supp. Aff. at 1.  Finally, XTO Energy contends that Mr. Biehler's affidavit addresses the appropriate rates for catastrophic well injuries rather than the rates involved in filing a motion to quash Zurich Insurance's subpoena here.  See Response to Supp. Aff. at 2.

On August 3, 2016, Zurich Insurance filed two additional affidavits.  See Zurich American Insurance Company's Second Supplemental Notice of Supplemental Affidavits Regarding Holland & Hart's Bill of Costs and Response to XTO's Notice of Supplemental Affidavits, filed August 3, 2016 (Doc. 120)("Zurich's Second Supplement").  Zurich Insurance

contends that the Court should "disregard the Affidavits submitted by XTO," because they "do not indicate in any form or fashion what they charge on an hourly rate basis for similar type of work." Zurich's Second Supplement at 1-2. Zurich attaches two additional affidavits. Charles J. Vigil, the President and Managing Director at Rodey, Dickason, Sloan, Akin & Robb, P.A. and the former President of the Board of Bar Commissioners, states that he is "aware of the hourly rates charged by other attorneys in the office who represent insurance companies in insurance coverage and bad faith litigation." Affidavit of Charles J. Vigil, filed August 3, 2016 (Doc. 120-1)("Vigil Aff."). Mr. Vigil notes that he has charged "from $225.00 to $350.00 per hour" in matters he where has represented insurance companies in coverage or bad faith litigation, while "the associate rate that the Firm has charged was $180.00 per hour." Vigil Aff. at 2.

Daniel J. O'Brien, an experienced partner at O'Brien & Padilla, P.C. who has tried more than ninety jury trials, submits an affidavit asserting that he has regularly represented insurance companies in insurance coverage and bad faith litigation for the past thirty-one years. See Affidavit of Daniel J. O'Brien at 1-2, filed August 3, 2016 (Doc. 120-2)("O'Brien Aff."). Mr. O'Brien has served as the "President of the State Bar of New Mexico, President of the New Mexico Defense Lawyers Association, and President of the New Mexico Chapter of ABOTA." O'Brien Aff. at 2. Mr. O'Brien avers that his hourly rate for insurance company coverage cases or bad-faith litigation "ranges from $160 to $225 per hour," while the associate rate is $150.00 per hour. O'Brien Aff. at 2. Mr. O'Brien argues that "this range of hourly rates [is] reasonable and standard in the State of New Mexico." O'Brien Aff. at 2.

In response, XTO Energy argues that the Court "should disregard Zurich's second supplemental affidavits for two reasons." Response to Zurich's Second Supplemental Notice of

Affidavits and Reply in Support of XTO's Notice of Supplemental Declarations, filed August 5, 2016 (Doc. 121)("Second Response to Supp. Aff."). First, Zurich Insurance contends that the additional affidavits "address only the rates that the affiants and others in their firm charge for work for *insurance companies*." Second Response to Supp. Aff. at 1 (emphasis in original). XTO Energy asserts that "Holland & Hart represents policyholders, not insurance companies, and does not discount its rates for volume because a coverage case for the policyholder may be the only insurance coverage case Holland & Hart ever tries for that client." Second Response to Supp. Aff. at 2. Second, XTO Energy again faults Zurich Insurance for failing to assert that Holland & Hart's rates are unreasonable. <u>See</u> Second Response to Supp. Aff. at 2. Finally, XTO Energy contends that Holland & Hart's rates are reasonable and "justified by the subject matter of the dispute." Second Response to Supp. Aff. at 3 (alterations to capitalization made for readability).

## <u>LAW REGARDING ATTORNEY'S FEES UNDER RULE 45(d)</u>

Under rule 45(d)(1), "a party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). If an attorney does not comply with this duty to avoid imposing an undue burden, the court "<u>must</u> enforce this duty and impose an appropriate sanction -- which may include lost earnings and reasonable attorney's fees." Fed. R. Civ. P. 45(d)(1) (emphasis added). A party's refusal to withdraw a defective subpoena can impose an undue burden when the defective subpoena requires the responding party to incur expenses to quash the subpoena. <u>See Night Hawk Ltd. v. Briarpatch Ltd., L.P.</u>, 2003 WL 23018833, at *9 (S.D.N.Y. Dec. 23, 2003)(Sweet, J.)("Sanctions are properly imposed and attorney's fees are awarded where, as here, the party improperly issuing the subpoena refused to withdraw it, requiring the

non-party to issue a motion to quash."); <u>Green v. MOBIS Alabama, LLC</u>, 2014 WL 2041857, at *2-3 (M.D. Ala. May 16, 2014)(awarding costs and fees where party "failed to take any steps, let alone any reasonable ones, to avoid imposing an undue burden or expense on [the subpoenaed person]"); <u>Murphy v. Bd. of Ed.</u>, 196 F.R.D. 220, 224-25 (W.D.N.Y. 2000)(Larimer, J.)(enforcing rule 11 sanctions for failing to notify opposing counsel of subpoenas).

Similarly, a party's refusal to narrowly tailor its discovery request to its needs can impose an undue burden when the discovery is overly broad and unnecessary.  <u>See</u> <u>Mount Hope Church v. Bash Back!</u>, 705 F.3d 418, 425 (9th Cir. 2012)(concluding that rule 45(d) sanctions were improper when "the subpoenaing party acted in good faith, [and] narrowly tailored its discovery request" so that it did not impose a logistical burden on the responding party); <u>Tiberi v. CIGNA Ins. Co.</u>, 40 F.3d 110, 112 (5th Cir. 1994)(reversing a sanctions award where the issuing party engaged in "sufficient good faith efforts to negotiate reasonable parameters on the subpoena"); <u>Green v. MOBIS Alabama, LLC</u>, 2014 WL 2041857, at *2-3 (awarding costs and fees where party "failed to take any steps, let alone any reasonable ones, to avoid imposing an undue burden or expense on [the subpoenaed person]").  Discovery relating to a law firm's hourly rates has the potential to impose an undue burden when that request is not narrowly tailored to the party's needs.  <u>See</u> <u>In re First Peoples Bank Shareholders Litig.</u>, 121 F.R.D. 219, 224 (D.N.J. 1988)(Simandle, J.)(stating that discovery relating to an attorney's fee award "must not launch an excursion into the barely relevant or beyond the borderline of harassment").

"To determine the reasonableness of a fee request, a court must begin by calculating the so-called 'lodestar amount' of a fee, and a claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee."  <u>Robinson v. City of Edmond</u>, 160 F.3d 1275, 1281 (10th Cir. 1998).  The lodestar is "'the number of hours reasonably expended on the litigation

multiplied by a reasonable hourly rate,' which produces a presumptively reasonable fee that may in rare circumstances be adjusted to account for the presence of special circumstances." Anchondo v. Anderson, Crenshaw & Assoc., LLC, 616 F.3d 1098, 1102 (10th Cir. 2010)(quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983), and Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 543-44 (2010)).   "The party requesting attorney fees bears the burden of proving" the two components used to calculate the fee award: (i) "the amount of hours spent on the case;" and (ii) "the appropriate hourly rates."  United Phosphorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d 1219, 1233 (10th Cir. 2000).  See New Mexico v. Valley Meat Co., LLC, 2015 WL 9703255, at *22 (D.N.M. Dec. 14, 2015)(Browning, J.)(citing United Phosphorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d 1219, 1233 (10th Cir. 2000)).  Once the Court makes these two determinations, the fee "claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee." Robinson v. City of Edmond, 160 F.3d 1275, 1281 (10th Cir. 1998).

"To determine what constitutes a reasonable rate, the district court considers the prevailing market rate in the relevant community."  New Mexico v. Valley Meat Co., LLC, 2015 WL 9703255, at *23 (quoting Lippoldt v. Cole, 468 F.3d 1204, 1224-25 (10th Cir. 2006)).  See Malloy v. Monahan, 73 F.3d 1012, 1018 (10th Cir. 1996).   The party entitled to fees must provide the district court with sufficient information to evaluate prevailing market rates.  See Lippoldt v. Cole, 468 F.3d at 1225.  Moreover, the party must also demonstrate that the rates are similar to rates for similar services by "lawyers of reasonably comparable skill, experience, and reputation" in the relevant community and for similar work.  Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984).  See Case v. Unified Sch. Dist. No. 233, 157 F.3d 1243, 1255-56 (10th Cir. 1998); Ramos v. Lamm, 713 F.2d 546, 555 (10th Cir. 1983)("The hourly rate should be based on the lawyers' skill and experience in civil rights or analogous litigation."), overruled in part on other

grounds, Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 483 U.S. 711, 725 (1987)..

Courts may also consider their own knowledge of market rates.  See Lippoldt v. Cole, 468 F.3d

at 1225.  The party seeking fees "should submit evidence supporting the hours worked and rates

claimed." Hensley v. Eckerhart, 461 U.S. 424, 434 (1983).  Although "[t]here is no precise rule

or formula," district courts have discretion to make an "equitable judgment" as to "eliminate" or

"reduce" requested fees "to reflect a plaintiff's overall success level." Hensley v. Eckerhart, 461

U.S. at 436-37.  See General Protecht Grp., Inc. v. Leviton Manufacturing Co., 122 F. Supp. 3d

1114, 1135 (D.N.M. 2015)(Browning, J.)("A district court may also make adjustments to the

lodestar figure to reflect a plaintiff's overall success level."); Ysasi v. Brown, 2015 WL 403930,

at *10 (D.N.M. Jan. 7, 2015)(Browning, J.).  In awarding fees, the district court should "provide

a concise but clear explanation of its reasons for [a] fee award." Hensley v. Eckerhart, 461 U.S.

at 438.

## ANALYSIS

To calculate XTO Energy's fee award, XTO Energy must show that "the amount of hours

spent on the case" were reasonable, and that Holland & Hart charged a reasonable hourly rate.

United Phosphorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d at 1233.  Although Holland & Hart

expended a reasonable amount of time, its hourly rates do not align with rates charged in the

District of New Mexico for similar high-end insurance litigation.  Accordingly, the Court

reduces Mr. Ramirez' rate to $350.00 per hour and Ms. Custer's rate to $200.00 per hour.

## I.   HOLLAND & HART SPENT A REASONABLE AND NECESSARY NUMBER OF HOURS RESPONDING TO THE SUBPOENA.

XTO Energy submits a statement of all of the tasks undertaken as a result of Zurich

Insurance's defective and overly broad subpoena.  See Motion at 1-2.  In line with both D.N.M.

LR–Civ. 54.5 and Tenth Circuit precedent, XTO Energy's Motion and attached exhibit

document the number of hours spent preparing a response to the subpoena, as well as its work in seeking fees.  The statement includes detailed descriptions of the work performed, which attorney performed the work, how much the attorney charged, and how long the attorney spent performing each task.  <u>See</u> Motion at Time Sheet, filed April 15, 2016 (Doc. 88-2)("Time Sheet").  Zurich Insurance does not challenge the number of hours spent performing these tasks. <u>See</u> Tr. at 24:23-25:3 (Court, Johansen).

Mr. Ramirez affirmed that the Motion reflects only the time spent preparing for argument regarding the Motion to Quash and excludes any time spent working on other issues in the case. <u>See</u> Affidavit of Jose A. Ramirez, filed April 15, 2016 (Doc. 88-1)("Affidavit").  The Court has no reason not to credit Mr. Ramirez' sworn statements in his affidavit.  From the Court's review, the Court can confirm that the tasks documented were not "excessive, redundant, or otherwise unnecessary."  <u>Robinson v. City of Edmond</u>, 160 F.3d at 1281 (internal quotation marks omitted)(directing parties to make a good-faith effort to exclude unnecessary hours).  Zurich Insurance does not contend that Holland & Hart spent an unreasonable amount of time performing these services.  Instead, Zurich Insurance asks that, if the Court does not reduce the hourly rate, it reduce the number of hours to arrive at a reasonable total fee.  <u>See</u> Response at 12. The Tenth Circuit admonishes, however, that courts should "not 'eyeball' the fee request and cut it down by an arbitrary percentage."  <u>Robinson v. City of Edmond</u>, 160 F.3d at 1281 (quoting <u>People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205</u>, 90 F.3d 1307, 1314 (7th Cir. 1996)).  If Holland & Hart obtained only limited success, Zurich Insurance would be justified in asking the Court to reduce the number of hours to reflect that limited success.  <u>See Hensley v. Eckerhart</u>, 461 U.S. at 436-37 ("The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.").

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." Hensley v. Eckerhart, 461 U.S. at 435. Because Holland & Hart's tasks appear reasonable and necessary to address the subpoena, and because Holland & Hart was successful, the Court concludes that XTO Energy spent 33.3 hours working on issues relevant to the Motion to Quash.

## II.    HOLLAND & HART'S HOURLY RATE DOES NOT REFLECT THE PREVAILING MARKET RATE IN THE DISTRICT OF NEW MEXICO FOR SIMILAR WORK.

"To determine what constitutes a reasonable rate, the district court considers the prevailing market rate in the relevant community." New Mexico v. Valley Meat Co., LLC, 2015 WL 9703255, at *23 (quoting Lippoldt v. Cole, 468 F.3d 1204, 1224-25 (10th Cir. 2006)). The rate must reflect rates that are reasonable in light of: (i) the attorney's level of experience; and (ii) the work the attorney performed.

First, the rate here must reflect reasonable rates that attorneys with similar skill and experience charge. Mr. Ramirez, a partner at Holland & Hart, obtained his bachelor's degree in political science from the University of California at Las Angeles in 1988, and his law degree from the University of Denver in 2003. He has considerable experience in insurance coverage cases. See Joe A. Ramirez, Partner, Holland & Hart, LLP, https://www.hollandhart.com/jramirez. From 2011 to 2016, he was named one of The Best Lawyers in America for insurance law. See Joe A. Ramirez, Partner, Holland & Hart, LLP, https://www.hollandhart.com/jramirez. Additionally, before attending law school, Mr. Ramirez supervised litigation for a "national property and casualty company," where he was responsible "for overseeing complex coverage disputes." Ely Aff. ¶ 5, at 2. Ms. Custer, an associate, "focuses her practice on complex commercial litigation." Katie Kramer Custer, Associate, Holland & Hart, LLP, https://www.hollandhart.com/kkcuster. She obtained her bachelor's

degree from the University of California at Santa Barbara in 2007, and her law degree from the University of Colorado in 2010.  See Katie Kramer Custer, Associate, Holland & Hart, LLP, https://www.hollandhart.com/kkcuster.   Overall, Mr. Ramirez has considerable experience in insurance coverage cases, and both Mr. Ramirez and Ms. Custer are experienced attorneys who fully prevailed on their Motion to Quash.

XTO Energy suggests that Mr. Ramirez should be entitled to a higher-than-market fee award given his specialization in insurance coverage cases.  See Reply at 5 (noting that "Holland & Hart does not have attorneys with this specialty in New Mexico").[7]  As the Tenth Circuit has previously concluded, however, "the fee rates of the local area should be applied even when the lawyers seeking fees are from another area," unless "the subject of the litigation is 'so unusual or requires such special skills' that only an out-of-state attorney possesses."  Lippoldt v. Cole, 468 F.3d at 1225-26 (quoting Ramos v. Lamm, 713 F.2d 546, 555 (10th Cir. 1983)).  See Jane L. v. Bangerter, 61 F.3d 1505, 1510 (10th Cir. 1995).  In Lippoldt v. Cole, the fee claimants urged the Tenth Circuit to award a national hourly rate rather than a local rate, because the attorney was "a national expert in civil rights cases."  Lippoldt v. Cole, 468 F.3d at 1225.  The Tenth Circuit affirmed the district court's application of a local hourly rate, because the plaintiffs "failed to establish that the subject of the litigation was so unusual that only an out-of-state attorney could present the case."  Lippoldt v. Cole, 468 F.3d at 1225.  A similar situation exists here.  Although XTO Energy argues that no Holland & Hart attorney possess a specialty in insurance coverage cases, this case also fits into the broader category of complex commercial litigation.  Holland &

---

[7]Holland & Hart has United States offices in Aspen, Colorado; Billings, Montana; Boise, Idaho; Boulder, Colorado; Carson City, Nevada; Cheyenne, Wyoming; Colorado Springs, Colorado; Denver, Colorado; Greenwood Village, Colorado; Jackson Hole, Wyoming; Las Vegas, Nevada; Reno, Nevada; Salt Lake City, Utah; Santa Fe, New Mexico; and Washington D.C.  See Locations, Holland & Hart, LLP, https://hollandhart.com/locations.

Hart attorneys in the New Mexico office possess experience in general commercial litigation, as do a sizeable number of other attorneys at different law firms.  According to her biography on Holland & Hart's website, Ms. Custer does not specialize in insurance coverage cases, yet she performed a substantial amount of work on this case, including arguing the Motion to Quash before the Court at the hearing.  See Katie Kramer Custer, Associate, Holland & Hart, LLP, https://www.hollandhart.com/kkcuster.  Although Mr. Ramirez may bring a special knowledge and efficiency to the litigation that general commercial litigators may not necessarily possess, this case does not require the kind of "unusual" or "special skills" that "only an out-of-state attorney possess."  Lippoldt v. Cole, 468 F.3d at 1225-26.  Consequently, Holland & Hart is entitled to hourly rates that attorneys with similar levels of experience -- partners and associates -- charge in the District of New Mexico.

In addition to reflecting the attorney's level of experience, the rate must also be reasonable in light of the work the attorney performed.  Below, the Court provides fee awards in the District of New Mexico since 2010, organized by date and identifying the type of work involved:

1.      Payne v. Tri-State Careflight, LLC, No. CIV 14-1044 JB/KBM, Memorandum Opinion and Order at 26-27 (Doc. 142)(D.N.M. Aug. 17, 2016)(Browning, J.)(noting that "the Defendants do not object to the hourly rates" that the plaintiff requested, and that "these rates are reasonable" for wage-and-hour litigation in federal court: $350.00 for an experienced lead trial counsel; $300.00 for a partner; and $175.00 for an associate).

2.      New Mexico v. Valley Meat Co., LLC, 2015 WL 9703255, at *23-24 (D.N.M. Dec. 14, 2015)(Browning, J.)(concluding that $200.00 per hour is a reasonable hourly rate for litigation involving violations of New Mexico statutes and removal to state court);

3.       Perez v. Restaurant Corp., 2015 WL 10990336, at *1 (D.N.M. April 1, 2015)(Wormuth, M.J.)(approving an hourly rate of $125.00 as reasonable for employment litigation);

4.       Ysasi v. Brown, 2015 WL 403930, at *10 (D.N.M. Jan. 7, 2015)(Browning, J.) (approving an hourly rates of $250.00 and $300.00 an hour as reasonable for civil rights litigation);

5.       Knott v. KTM WWG, LLC, 2014 WL 11514681, at *1 (D.N.M. May 15, 2014)(Wormuth, M.J.)(stating that a $250.00 hourly rate "is the prevailing market rate in the relevant community" for employment related litigation under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-219);

6.       Copar Pumice Co. v. Morris, No. CIV 07-0079 JB/ACT, 2012 WL 2383667, at *20-21 (D.N.M. June 13, 2012)(stating that the following rates were reasonable in a civil rights action: (i) $235.00 per hour for partners; (ii) $200.00 per hour for senior associates; (iii) $150.00 per hour for other associates; and (iv) $75.00 per hour for paralegals);

7.       In re Thornburg Mortg., Inc. Sec. Litig., 912 F. Supp. 2d 1178, 1258 (D.N.M. 2012)(Browning, J.)(concluding that a rate of $200.00 was reasonable for a mix of partners, associates, and paralegals in a complex securities litigation);

8.       Lane v. Page, 862 F. Supp. 2d 1182, 1257 (D.N.M. 2012)(Browning, J.)(stating that $200.00 per hour is a "relatively low rate" for attorneys in New Mexico);

9.       Avendano v. Smith, 2011 WL 5822733, at *2 (D.N.M. Nov. 3, 2011)(Browning, J.)(finding rates of $180.00 per hour reasonable);

10.      Two Old Hippies, LLC v. Catch the Bus, LLC, 277 F.R.D. 448, 465 (D.N.M. 2011)(Browning, J.)(finding that $275.00 per hour is a reasonable rate for an attorney who is

"one of the more seasoned and experienced commercial litigators in the District of New Mexico," and $195.00 is a reasonable rate for an "excellent associate" in a contract dispute);

11.     Obenauf v. Frontier Fin. Grp., Inc., 785 F. Supp. 2d 1188, 1208 (D.N.M. 2011)(Browning, J.)(awarding attorney's fees at $250.00 per hour for an attorney with twelve years of experience, "given the prevailing market rates in the community for an attorney with similar experience");

12.     Martinez v. Carson, No. CIV 08-1046 WJ/LFG, Mem. Op. and Order Granting in Part Plaintiff's Motion for Attorney Fees and Expenses at 7-8 (Doc. 231)(D.N.M. Aug. 11, 2011)(Johnson, J.)(concluding that a rate of $350.00 per hour is appropriate for one of "one of New Mexico's preeminent trial lawyers," Paul Kennedy, who has demonstrated "superb trial advocacy skills" in a police misconduct civil rights case, and that a rate of $175.00 per hour is reasonable for an attorney who has been practicing law for five years);

13.     Valdez v. Herrera, No. 09–CV–0668 JCH/DJS, Order Granting Attorneys' Fees at 3 (Doc. 149)(D.N.M. Mar. 21, 2011)(Herrera, J.)(approving fee awards of: (i) $350 per hour for lawyers who graduated from law school before 1996; (ii) $300 per hour for lawyers who graduated between 1996 and 2000; (iii) $225 per hour for lawyers how graduated between 2001 and 2006; (iv) $150 per hour for lawyers who graduated in 2007 and afterwards; and (v) $95 per hour for legal interns and legal support staff);

14.     Mackey v. Staples, Inc., No. CIV 09-0023 JCH/WPL, Order Granting Attorneys' Fees and Costs at 5 (Doc. 199)(D.N.M. Mar. 4, 2011)(Herrera, J.)(awarding fees at a rate of $350.00 per hour to civil rights litigators with thirty-seven years of experience);

15. <u>Avila v. Ratchner</u>, No. CIV 01-0349 JC/LAM, Memorandum Opinion and Order at 6-7 (Doc. 214)(D.N.M. Sept. 27, 2010)(Conway, S.J.)(awarding fees in the range of $200.00 to $300.00 for attorneys in a police misconduct case);

16. <u>Pedroza v. Lomas Auto Mall, Inc.</u>, 716 F. Supp. 2d 1031, 1050-51 (D.N.M. 2010)(Browning, J.)(finding that $150.00 per hour is a "very reasonable" rate for commercial litigators in New Mexico);

17. <u>Mountain Highlands, LLC v. Hendricks</u>, 2010 WL 1631856, at *9-10 (D.N.M. Apr. 2, 2010)(Browning, J.)(approving an hourly rate of $170.00 to $210.00 per hour as reasonable for commercial litigation);

Holland & Hart cites <u>Chavez v. Chavez</u>, No. CIV 13-1047 (D.N.M. 2013), in which Judge Parker reduced the requested awarded attorney's fees of $425.00 an hour for a civil rights case to $375.00 an hour. <u>See</u> <u>Chavez</u> at 12. Judge Parker reduced the rate for an associate with five years of experience from $225.00 to $175.00. <u>See</u> <u>Chavez</u> at 12-13. As the Court noted at the hearing, however, Albuquerque attorneys charged higher rates in civil rights cases, because few people litigated these cases from December 2001 through 2009 in light of the city's policy against settling. <u>See</u> Tr. at 33:20-25 (Court)("[T]he rates [in civil rights cases] have been drifting up a little bit, and my sense is [they are] higher than other rates in the community."). Under Mayor Martin Chavez, the City of Albuquerque had a "general policy of not settling police misconduct cases." MGT of America, Inc., City of Albuquerque, New Mexico: Evaluation of the Police Oversight Ordinance and the Police Oversight System (May 2006)(stating that the "mayor adopted a 'no settlement' policy for claims involving officer misconduct"). <u>See</u> Jeff Proctor, <u>Police Payouts Soar</u>, Albuquerque Journal (May 25, 2012), <u>available at</u> http://www.abqjournal.com/82677/police-payouts-soar.html. This policy deterred many

plaintiffs' lawyers from litigating civil rights cases, because they would recover only if they prevailed at trial, and then only get paid an hourly rate, and not any kicker for all the risk that they assumed.   See Proctor, Police Payouts Soar (noting Albuquerque attorney Joe Fine's observation that the "no-settlement policy contributed to a lack of accountability among APD officers" and therefore "result[ed] in more unjustified police shootings").

In short, some attorneys did not want to risk litigating a case through trial and not being paid. Accordingly, when Mayor Richard Berry abandoned the no-settlement policy, those lawyers who maintained a vigorous civil rights practice throughout the Chavez years had a substantial litigational advantage over other civil rights attorneys and could charge higher fees.[8] Many of the fee awards to which the parties cite involve these attorneys who maintained an active civil rights practice throughout Mayor Chavez' tenure, and therefore obtained higher fees. Martinez v. Carson, No. CIV 08-1046 WJ/LFG, at 7-8 (observing that "preeminent" civil rights attorney Paul Kennedy charged $450.00 an hour, but that "he provides no evidence that the New Mexico market would normally encompass such a rate, even at its upper end and particularly at a

---

[8]The statistics reveal that the City of Albuquerque resolved significantly fewer cases during Mayor Chavez' tenure than during Mayor Berry's. Throughout the entire eight years in which the no-settlement policy was in place, the City of Albuquerque resolved 120 cases. See Jeff Proctor, Police Misconduct Costly, Albuquerque Journal (Feb. 6, 2012). In contrast, during the first two years of Mayor Berry's time in office, the City of Albuquerque had already resolved ninety-one cases. See Proctor, Police Misconduct Costly, at 1. Although the Court was not among them, federal judges, including the Honorable Christina Armijo, United States District Judge, criticized the city's no-settlement policy for depriving plaintiffs of relief. See Graham v. Kenny, CIV No. 07-0258 MCA/DJS, Memorandum Opinion and Order (Doc. 38)(Armijo, J.)(observing that "Albuquerque's 'no settlement' policy [] effectively leaves Plaintiff with no other means of resolving his claims except to move for summary judgment on liability and try the remaining claims for damages before a jury").

The Court views settlement policy to be a policy decision for the political branches to decide, and there are good business reasons for no-settlement policies. The criticism from some of the federal judges, and other community members, of the City of Albuquerque's no-settlement policy prompted Mayor Berry to change the policy and settle cases.

time when New Mexico is still suffering from the effects of what has been a prolonged period of economic downturn").  Accordingly, an attorney practicing in the District of New Mexico can often receive higher fees litigating civil rights cases than litigating commercial cases, and given the risk of litigating for only an hourly rate and no kicker, the upward pressure on rates may be justified.

Similarly, in Chavez, Judge Parker observed that the affiants involved in the case "testified that $425.00 per hour was reasonable and customary compared to fees charged in New Mexico by attorneys with similar experience and skill in federal civil rights litigation."  Chavez at 11 (emphasis added).  Holland & Hart admitted that Chavez "did seem to be the highest [--] one of the highest rates that I found approved in the district of New Mexico in recent years."  Tr. at 34:11-17 (Custer).  Despite the higher fee awards typical of civil rights cases, Judge Parker nevertheless reduced the requested fee award.  See Chavez at 11-12.  He concluded that "the recent rulings in the District of New Mexico for attorneys with similar experience" demonstrated that "$375.00 is reasonable and appropriate" for two of the "finest litigators in the country with a well-deserved reputation for excellence in civil rights cases."  Chavez at 11-12.  Likewise, in Mackey v. Staples, Inc., the Honorable Judith C. Herrera, United States District Judge, concluded that $350.00 for hour was "the upper end of the fee scale for New Mexico attorneys" in a civil rights case in which the attorneys "practiced civil rights litigation for 37 years, and are among the most respected practitioners in their field."  Mackey v. Staples, Inc., Mackey v. Staples, Inc., No. CIV 09-0023 JCH/WPL, at 4-5.  Although $375.00 may be a reasonable rate for civil rights litigation, the Court does not have evidence before it that the New Mexico market will bear rates upward of $350.00 for high-end insurance work.

The affidavits that the parties submitted provide further insight into reasonable New Mexico rates. Mr. Ely, who has focused on legal malpractice and has observed numerous rates for more than thirty years, states that Holland & Hart's rates are reasonable. See Ely Aff. ¶¶ 2-3, at 1-2. Similarly, Mr. Freedman, who focuses on complex commercial litigation and a variety of other kinds of cases, notes that Holland & Hart's rates are reasonable. See Freedman Aff. ¶¶ 4-5, at 2-3. Neither Mr. Ely nor Mr. Freedman provide a dollar range of reasonable New Mexico rates. Although Mr. Ely has seen various rates in his malpractice work, he does not demonstrate the same familiarity with rates in insurance coverage and bad-faith litigation that Mr. Biehler, Mr. Vigil, and Mr. O'Brien demonstrate. The affidavits that Zurich Insurance proffered provide more pointed insight into the amount that New Mexico attorneys charge for this type of work.

Mr. Biehler states that his standard hourly rate for high-end insurance coverage cases "is between $230 and 240 per hour," while associate rates "are in the range of $175 to $200" an hour. Biehler Aff. ¶¶ 10-11, at 2. Mr. Vigil charges "from $225.00 to $350.00 per hour" in matters he where has represented insurance companies in coverage or bad faith litigation, while "the associate rate that the Firm has charged was $180.00 per hour." Vigil Aff. at 2. Finally, Mr. O'Brien's hourly rate for insurance coverage cases or bad-faith litigation "ranges from $160 to $225 per hour," while the associate rate is $150.00 per hour. O'Brien Aff. at 2. Mr. O'Brien argues that "this range of hourly rates [is] reasonable and standard in the State of New Mexico." O'Brien Aff. at 2.

Both the case law and the affidavits indicate that rates for associates are lower than the rates that Ms. Custer charges. Although Mr. Freedman asserts that Ms. Custer' rates are "reasonable," he acknowledges that they are "at the high end." Freedman Aff. ¶ 4, at 2. The Court agrees. The case law and the affidavits reflect that the highest rate that an excellent, sixth-

year associate charges for this work is $200.00.  See Biehler Aff. ¶¶ 10-11, at 2; Payne v. Tri-State Careflight, LLC, No. CIV 14-1044 JB/KBM, Memorandum Opinion and Order at 26-27 (noting that $175.00 is a reasonable associate rate in federal wage-and-hour litigation in 2016); Copar Pumice Co. v. Morris, No. CIV 07-0079 JB/ACT, 2012 WL 2383667, at *20-21 (stating that $200.00 an hour was a reasonable rate for senior associates in a civil rights action); Two Old Hippies, LLC v. Catch the Bus, LLC, 277 F.R.D. at 465 (finding that $195.00 is a reasonable rate for an "excellent associate" in a contract dispute).

Regarding partner rates, the most persuasive evidence before the Court is Mr. Vigil's affidavit, which Zurich Insurance introduced.  The Rodey law firm is one of the firms in the state that is comparable to Holland & Hart for high-end commercial work.  Often, when a law firm's repeat client gets in trouble, the firm helps the client get insurance, and for efficiency reasons, the firm continues to represent the client after insurance is secured.  When the insurer takes over the case, the client's firm must frequently accept a lower rate to keep working on the case.  This situation usually results in a win-win for everyone.  The client and the insurer do not have to wait for a new law firm to get up to speed in the case, while the law firm maintains a steady payment source.  If the Rodey firm is charging $350.00 per hour, that is probably the best evidence of the market rate that Holland & Hart could charge.  Holland & Hart could probably not get much more in this market, and while they are excellent lawyers and should get what Rodey is getting, they should not get more.

Overall, the cases and the affidavits indicate that a reasonable rate in this case is $350.00 for a very experienced partner and $200.00 for a very good associate.[9]  Even in Chavez, the case

_____

[9]The Court recognizes that this case is not a typical insurance defense case in which the law firm works for the insurance company at a discounted rate in exchange for more cases.  See Second Response to Supp. Aff. at 1-2.  The Court takes this information into account and does

to which XTO Energy directs the Court's attention, Judge Parker reduced the rate for an associate with five years of experience from $225.00 to $175.00.  See Chavez at 12-13.  Rates for catastrophic injury cases, like the one involved in the underlying Manley and Betancur litigation, may be lower, hovering somewhere between $200.00 and $300.00 for an experienced partner, and around $175.00 for an associate.[10]  See Biehler Aff. ¶¶ 5-6, at 2 (stating that a standard hourly rate for representing defendants in catastrophic oilfield injury cases "is $185 per hour" for partners, and $165.00 per hour for associates).  The work involved in this case, however, is more complicated than the work in a straightforward personal injury case.[11]  The case law and affidavits reflect this trend.  Notably, Mr. Biehler charges considerably more for high-end insurance work than for catastrophic injury cases.  See Biehler Aff. ¶ 6, at 2 (stating that he charges $185.00 per hour for catastrophic oil-field injury cases, while he charges between $230.00 and $240.00 for difficult insurance coverage disputes).  The Court must be sensitive to the precise work done.  The market rate for high-end commercial litigation is higher than the market rate for automobile insurance cases and slip-and-fall work.  On the other hand, civil

---

not depress the fees to account for high volume negotiations.  Instead, the Court considers numerous fee awards on various complex commercial cases, some of which are one-time representations between the firm and the insurance carrier.

[10]The Court does not decide what constitutes a reasonable rate for catastrophic oilfield injury cases, as that issue is not properly before the Court.  See Response to Supp. Aff. at 2 (stating that the issue of a reasonable rate in the underlying case "has not been briefed by the parties and is not properly before the Court").  The Court notes, however, that the New Mexico market does not appear to bear the same high rates that are available in high-end commercial work.

[11]Moreover, the work involved in responding to Zurich Insurance's subpoena was no minor matter.  Zurich Insurance subpoenaed years of Holland & Hart's billing documents and agreements with other clients that "implicated important privilege and client issues for Holland & Hart that it could not ignore."  Reply at 6.  Responding to the subpoena would cost someone a great deal of time and money.

rights work commands more in this state.  In conclusion, the Court will award XTO Energy

attorney's fees for the number of hours that Holland & Hart submitted, but it will reduce the rates

to $350.00 for Mr. Ramirez and to $200.00 for Ms. Custer.

**IT IS ORDERED** that Holland & Hart's Bill of Costs, filed April 15, 2016 (Doc. 88), is

granted in part and denied in part.  The Court will award XTO Energy attorney's fees for the

number of hours that Holland & Hart submitted, but it will reduce the rates to $350.00 for Mr.

Ramirez and to $200.00 for Ms. Custer.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Bradford C. Berge
Holland & Hart LLP
Santa Fe, New Mexico

-- and --

Katie K. Custer
Holland & Hart LLP
Denver, Colorado

-- and --

Jose A. Ramirez
Holland & Hart LLP
Greenwood Village, Colorado

*Attorneys for Plaintiff XTO Energy, Inc.*

Sam L. Fadduol
Joshua K. Conaway
Fadduol, Cluff, Hardy & Conaway, P.C.
Albuquerque, New Mexico

-- and --

Maureen A. Sanders
Sanders & Westbrook, P.C.
Albuquerque, New Mexico

     *Attorneys for Plaintiffs-in-Intervention Scott Manley, Shanna Manley, Jose Betancur, and Virginia Betancur*

Terry R. Guebert
Robert Gentile
Michael Jasso
Guebert Bruckner, P.C.
Albuquerque, New Mexico

     *Attorneys for Defendant ATD, L.L.C.*

James H. Johansen
Shawn S. Cummings
Amy Elizabeth Headrick
Rheba Rutkowski
Butt, Thornton & Baehr, P.C.
Albuquerque, New Mexico

     *Attorneys for Defendant and Third-Party Plaintiff Zurich American Insurance Company*

Andrew B. Curtis
Craig, Terrill, Hale & Grantham, L.L.P.
Lubbock, Texas

     *Attorney for Third-Party Defendant Basic Energy Services, Inc.*

Michael Lemoine
Jones Walker
Lafayette, Louisiana

-- and --

Matthew T. Byers
McCormick, Caraway, Tabor & Byers L.L.P.
Carlsbad, New Mexico

     *Attorneys for Third-Party Defendant Weatherford Artificial Lift Systems, Inc., Weatherford International, Inc., and Weatherford U.S., L.P.*